Frederick Lawrence NASS, Appellant,

v.

Sharon Michele SEATON, Appellee.

No. S–5827.

Supreme Court of Alaska.

Oct. 20, 1995.

Charles A. Winegarden, Kodiak, for Appellant.

Alan L. Schmitt, Jamain, Ebell, Bolger & Gentry, Kodiak, for Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

### OPINION

RABINOWITZ, Justice.

## I. *INTRODUCTION*

Fred Nass appeals from the superior court's modification of his monthly child support obligation. This appeal raises the issues of whether gifts received by Fred should be considered income for purposes of calculating child support; whether accounts receivable from Fred's business were properly considered income; whether Fred should be allowed to straightline depreciate that portion of his home used for business; whether Fred was voluntarily underemployed and capable of earning $45,000 per year; whether Fred was properly allocated 100% of the children's visitation transportation expenses; and whether Sharon Seaton was entitled to attorney's fees and costs.

## II. *FACTS AND PROCEEDINGS*

Fred and Sharon were married in Kodiak on May 23, 1976. There were two minor children born of the marriage: Kimberly Michele, born September 20, 1979, and Robert Henry, born October 18, 1981. The parties were granted a divorce on May 25, 1988. In conjunction with the divorce, Fred and Sharon entered into a "Separation, Child Custody and Property Settlement Agreement" (agreement) in which the parties agreed to share

legal custody of their two minor children. Fred and Sharon agreed that Sharon would have primary physical custody of the children and that Fred would have liberal visitation rights. The agreement was incorporated into the superior court's decree of divorce. Additionally, the superior court determined that Fred should pay monthly child support in the amount of $675 per child, or $1,350 per month.

In May 1989, the superior court modified the decree based upon the parties' stipulation that Fred's monthly child support obligation should be reduced to $335 per child, and that "[t]he parties agree that they will seek no accounting for prior child support or prior spousal support through May 31, 1989...." In May 1992, Sharon filed a motion to modify child support requesting that the superior court order Fred to pay child support every month, even for those months in which he exercises visitation, and additionally that Fred's monthly child support obligation be increased. Sharon's motion was based on two grounds: (1) the amendments to Alaska Civil Rule 90.3 which went into effect on January 15, 1990 (Supreme Court Order No. 1088), and (2) Fred's receipt of $20,000 in gifts in 1991 and 1992 from Walter and Alice Nass, his parents. Fred opposed the motion, arguing that Sharon had no competent evidence that the gifts were made; however, Fred did not explicitly deny that he had received the gifts. Fred further contended that a gift is not income for purposes of determining his child support obligations under Civil Rule 90.3.[1] Fred in turn moved to retroactively decrease his child support obligation to the date Sharon filed her modification motion, or alternatively, to modify child support under Civil Rule 90.3 "based upon his present income."

Following a hearing, the superior court entered a modification of its previous support order. The new decree required Fred to pay a total of $1,012.50 in monthly child support for the parties' two children, with a fifty percent reduction in this level of support to take place when Fred has physical custody of the children.[2]

Fred now brings this appeal.[3]

### III. APPLICABLE STANDARDS OF REVIEW

■ A court's modification of a child support award "will not be overturned absent a finding of a clear abuse of discretion." *Eagley v. Eagley*, 849 P.2d 777, 778 & n. 1 (Alaska 1993). We will disturb an award only if our review of the entire record leaves us with a "definite and firm conviction that a mistake has been made." *Id.* at 778 n. 1 (quoting *Richmond v. Richmond*, 779 P.2d 1211, 1216 (Alaska 1989)).

It is firmly established that, pursuant to Alaska Civil Rule 52(a), "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See Horton v. Hansen*, 722 P.2d 211, 215 n. 7 (Alaska 1986).

■ As to whether gifts should be treated as income for purposes of calculating child support, and whether straightline depreciation of real estate should be permitted in this case, we apply a *de novo* standard of review and adopt the "rule of law that is most persuasive in light of precedent, reason, and policy." *Matter of K.L.J.*, 813 P.2d 276, 278 n. 1 (Alaska 1991).

### IV. DISCUSSION

A. *Whether the Superior Court Erred in Considering the Gifts Fred Received from his Parents as Income in Determining his Child Support Obligations*

Where one parent is awarded sole or primary physical custody, Civil Rule 90.3(a) provides in part that child support awards are based upon the noncustodial parent's adjusted annual income. "Adjusted annual in-

---

1. After some procedural maneuvering, Fred stipulated that he had received $20,000 in the years 1990, 1991, and 1992 from his parents.

2. In addition, the court awarded Sharon $2,266.50 in attorney's fees and $240.11 in costs.

3. Fred has advanced nineteen separate specifications of error.

come" is in turn defined as "the parent's total income from all sources" minus various deductions not at issue here. Alaska R.Civ.P. 90.3(a)(1). Comment III(A) to Civil Rule 90.3, which relates to the subject of defining income, states:

Means based sources of income such as Aid to Families with Dependent Children (AFDC), Food Stamps and Supplemental Security Income (SSI) should not be considered as income. *The principal amount of one-time gifts and inheritance should not be considered as income, but interest from the principal amount may be considered as income and the principal amount should be considered as to whether unusual circumstances exist as provided by 90.3(c).*

(Emphasis added.) [4]

In regard to whether the $20,000 gifts should be included in Fred's adjusted gross income under Civil Rule 90.3, the superior court entered the following relevant findings of fact:

The undisputed evidence is that [Fred] received gifts of $20,000 in each of the following years: 1990, 1991, 1992. And I find that he is due and more than likely will receive an additional $20,000 for 1993. Whether or not he receives it in 1993 is irrelevant. The undisputed testimony is that both [Fred] and his sister have received and are to receive a total of $80,000 each as part of an estate planning plan of his father. His sister has received all $80,-

000. The father's testimony during a deposition conducted by the parties is that he intends to pay [Fred] all $80,000 and he stopped solely because of this support dispute in this case. *Accordingly, the $20,000 payment in 1992 and what he is to receive for 1993 is included in his income for calculating child support.*

(Emphasis added.)

In its formal findings of fact the superior court states:

Based upon defendant's reported income, his potential income, the gifts from his father of $20,000.00 per year, and the value of his extraordinarily low business and living expenses, the court finds that defendant's adjusted gross income for child support purposes is $45,000.00 per year. This applies to 1992 and to 1993.

Fred relies on a number of decisions from other jurisdictions which refuse to consider gifts to the obligor as income for purposes of calculating child support. These authorities emphasize the fact that the donors have no legal obligation to continue giving the gifts. *See In re Marriage of Harmon,* 210 Ill. App.3d 92, 154 Ill.Dec. 727, 729–30, 568 N.E.2d 948, 950–51 (1991); *True v. True,* 615 A.2d 252, 252–53 (Me.1992); *Ikard v. Ikard,* 819 S.W.2d 644, 648–49 (Tex.App.1991) (holding that gifts are not to be considered a resource to the recipient unless the donor has a legal obligation to give them); *Ebbert v. Ebbert,* 744 P.2d 1019, 1023 (Utah App. 1987).[5]

---

**4.** Civil Rule 90.3(c) provides in part as follows:
(1) The court may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied. The court must specify in writing the reason for the variation, and the estimated value of any property conveyed instead of support calculated under the other provisions of this rule. Good cause may include a finding:
(A) that unusual circumstances, such as especially large family size, significant income of a child, health or other extraordinary expenses, or unusually low expenses, exist which require variation of the award in order to award an amount of support which is just and proper for the parties to contribute toward the nurture and education of their children. The court shall consider the custodial parent's income in this determination.

**5.** In addition to the authorities relied upon by Fred, there are other decisions which support his position. For example, in *In re Marriage of Seanor,* 876 P.2d 44 (Colo.App.1993), the court considered whether gifts to the wife from her current husband should be included in the wife's income for purposes of calculating her former husband's child support obligation. The Colorado court held that such gifts do not fall within the statutory definition of gross income. *Id.* at 49. The court further noted that current spouses are usually not required to contribute support to stepchildren. *Id.*

In *Shiveley v. Shiveley,* 635 So.2d 1021 (Fla. App.1994), the court held that the trial court erred in imputing income to the wife for purposes of calculating child support based upon a historical pattern of gift giving by the wife's parents. In *Huebscher v. Huebscher,* 206 A.D.2d 295, 614 N.Y.S.2d 524 (1994), the court held that

On the other hand, this court has previously held that gifts to a noncustodial parent from his mother must be considered in determining the level of the noncustodial parent's child support obligation. *Pattee v. Pattee,* 744 P.2d 658, 662 (Alaska 1987). In *Pattee,* the noncustodial parent's primary source of income was a $1,000 monthly allowance he received from his mother. *Id.* at 662.[6]

Review of authorities addressing the question of whether gifts to the obligor parent should be considered income for purposes of determining the level of the obligor's support obligation leads us to the determination that the principal amount of gifts and inheritances should not be considered as income for purposes of Rule 90.3. We are persuaded that any other approach blurs the easily administered and well-established historical distinction between gifts and earned income. In short, we conclude that the authorities which refuse to recognize the inclusion of gifts in determining the level of the obligor's adjusted gross income for purposes of calculating a child support obligation represent the correct rule of law.[7] We therefore hold that it was error for the superior court

to include any gifts from Fred's parents in calculating his child support obligation under Civil Rule 90.3.[8]

**B.** *Whether the Superior Court Erred in Finding that Fred's Machine Business Accounts Receivable were Income*

In its formal findings of fact the superior court stated:

> Defendant has a number of accounts receivable. Given that his business practice is careful, and that he normally does not carry bad debt, the court finds that by and large these accounts are collectible and are the equivalent of a savings account.

Our review of the record supports these findings.[9] We cannot say that the superior court's finding that these accounts receivable were collectible is clearly erroneous.[10]

**C.** *Whether the Superior Court Erred in Disallowing Straightline Deductions for Real Estate Depreciation of Machine Business Premises*

Fred challenges the superior court's determination that real estate used in con-

---

the husband's testimony that the wife's mother had provided the couple with annual gifts during the course of their marriage, coupled with other evidence of past generosity, was an improper basis upon which to impute such income to the wife for purposes of calculating child support. To this effect, the court stated that the mother had no legal obligation to continue to give these gifts and that there was no guarantee that such gifts would continue in the future.

**6.** *See also Barnier v. Wells,* 476 N.W.2d 795 (Minn.App.1991). In *Barnier,* the court considered whether the trial court erred in including monthly payments of $830 from the husband's father and payments of $5,000 from the husband's grandmother on his birthday, Easter, and Christmas as income in determining his child support obligation. The court concluded that if a gift is regularly received from a dependable party, it may properly be used to determine the amount of child support obligations. *Id.* at 797.

In *Petrini v. Petrini,* 336 Md. 453, 648 A.2d 1016 (1994), the court considered whether the trial court could include noncash gifts to a parent in determining the amount of that parent's actual income for child support purposes. The court held that the trial court did not abuse its discretion in deciding that the gifts constitute actual income for purposes of calculating child support. *Id.* at 1021.

**7.** To the extent that *Pattee v. Pattee,* 744 P.2d 658 (Alaska 1987), is inconsistent with this holding, it is overruled.

**8.** We note that on remand it is open to the superior court to consider whether Sharon, under Civil Rule 90.3(c), demonstrated good cause, upon proof by clear and convincing evidence, that manifest injustice would result if the support award was not varied by inclusion of the gifts which Fred received.

**9.** Exhibit P demonstrates annual receivables that have not yet been collected of $613.60 in 1990, $443.36 in 1991, $19,030.71 in 1992, and $6,036.46 in 1993.

**10.** Unlike our resolution of the gift-income specification of error, here the superior court's finding that Fred lacked credibility has relevance. Since we noted that the superior court's credibility finding was not clearly erroneous, being within the province of the trial court, we further conclude that the superior court did not err in rejecting Fred's testimony that he could not collect the debts. In this regard we note that in its oral decision the superior court observed "[a]nd I find that some [accounts receivable] were generated as receivables to reflect a lower income because of this support dispute."

junction with Fred's machinery business could not be depreciated straightline for purposes of determining Fred's adjusted income. In our view the superior court's holding is contrary to our decision in *Eagley*, 849 P.2d at 777. At the time of the *Eagley* decision, Comment III(B) to Civil Rule 90.3 stated:

> Income from self-employment ... includes the gross receipts minus the ordinary and necessary expenses required to produce the income. Ordinary and necessary expenses do not include amounts allowable by the IRS for the accelerated component of depreciation expenses, [and] depreciation of real estate.

■ In *Eagley* we rejected the commentary's categorical disallowance of all depreciation of real estate, and held that straightline depreciation of business real estate was appropriate. *Id.* at 781–82. *Eagley* thus requires reversal of the superior court's disallowance of straightline depreciation for that portion of the residence which Fred used in his machinery business. This aspect of the appeal is therefore reversed and remanded with instructions to calculate straightline depreciation limited to the areas of the residence that are in fact used in the conduct of Fred's machinery business.

D. *Whether the Superior Court Erred in Finding that Fred was Voluntarily Underemployed*

■ Fred has raised a number of arguments asserting that the superior court's findings that he was voluntarily underemployed are clearly erroneous. The superior court's determination of Fred's underemployment was based on the following findings: Fred's past annual income of $100,000; Fred was currently operating a highly skilled machinist business which had attracted major customers; he had established and benefited from a good business reputation as well as twenty years of experience; Fred's history of borrowing large sums of money on his credit cards indicated an ability to repay significant monies; Fred possessed a significant number of collectible accounts receivable (which the superior court treated as equivalent to savings accounts); and Fred was selective in the type of work he takes as well as for whom he does work. The superior court additionally found that Fred did not maintain a business phone; that he acknowledged a desire to keep a low profile; that Fred's business had been increasing over time; and that Fred owned a bulldozer which was not being optimally used to earn income.

■ Fred argues that Sharon should be estopped from relying on his past annual wages of $100,000 while he was employed at Kodiak Sanitation, Inc. (KSI), because Sharon previously acknowledged that Fred's income would decrease as a result of the sale of their KSI stock.

Our review of the record convinces us that the superior court's ultimate finding that Fred is in fact voluntarily underemployed is not clearly erroneous. Fred testified as follows:

> There probably is more work out there to do. I'm sure if I got a shop somewhere and hired a bunch of people and bought more machinery I could be busier than the dickens. But that is not my desire. I've had employees in the past and I think I had very good employees but it's still a big pain in the neck and I would prefer not to go through it.

And as follows:

> I don't have a listing for my business in the phone book. I try to keep kind of a low profile.

And as follows:

> I try not to advertise at all because all of the business that I do is walk in the door business. My philosophy is that if I advertise, I am soliciting someone's business. If they just walk in my door they are soliciting my help and there's a major difference there.

In brief, the above, when considered in light of the entire evidentiary record, leads us to hold that the superior court's conclusion that Fred "has the potential to earn more income than he has shown from his machine work" is not clearly erroneous. However, this holding requires us to address several related issues which must be decided by the superior court upon remand.

Comment III(C) to Civil Rule 90.3 provides, as to imputed potential income, the following:

The court may calculate child support based on a determination of the potential income of a parent who voluntarily is unemployed or underemployed.... Potential income will be based *upon the parent's work history, qualifications and job opportunities. The court also may impute potential income for non-income or low income producing assets.*

(Emphasis added.)

 We have previously held that a non-custodial parent who voluntarily reduces his or her income should not automatically receive a corresponding reduction in his or her child support obligation. *Pattee,* 744 P.2d at 662. There we said:

On the one hand, we do not believe that an obligor-parent should be 'locked in' to a particular job or field during the minority of his or her children when accepting a lower paying position may ultimately result in personal or professional advancement. On the other hand, the children of the marriage and the custodial parent should not be forced to finance the noncus-todial parent's career change. We believe that the better rule is that stated by the Montana Supreme Court: "[T]he Judge [is] to consider the nature of the changes and the reasons for the changes, and then to determine whether, under all the circumstances, a modification is warranted."

*Id.* at 662 (citations omitted); *see also Pugil v. Cogar,* 811 P.2d 1062, 1066 (Alaska 1991). Given the above, we offer the following guidance to the parties and the superior court on remand. First, it was not error for the superior court to consider Fred's past income with KSI in calculating support. The superior court's consideration of this past particular earning history, together with other relevant evidence, is in accordance with the purpose of Civil Rule 90.3 and the above quoted commentary thereto.[11]

 Second, as noted previously, the superior court found that Fred's adjusted gross income for child support purposes is $45,000 per year.[12] Our decisions have clearly established that it is the duty of the trial court to enter findings of fact which are adequate to accord rational appellate review.[13] Admittedly, in the circumstance of a voluntarily underemployed parent, the supe-

11. In *Renfro v. Renfro,* 848 P.2d 830 (Alaska 1993), we affirmed the superior court's calculation of an obligor-parent's adjusted annual income based in part upon his higher annual earnings over a decade earlier. *Id.* at 833. As an owner of a private business, the obligor-parent claimed that he made only $24,000 per year, yet the trial court established an adjusted annual income of $30,000. *Id.* We approved of an averaging approach when a parent's future earnings are uncertain and noted that the obligor-parent's business was improving after three bad years. *Id.* at 833 & n. 5.

12. More specifically, the superior court found as follows:

Based upon defendant's reported income, his potential income, the gifts from his father of $20,000 per year, and the value of his extraordinarily low business and living expenses, the court finds that defendant's adjusted gross income for child support purposes is $45,000.00 per year.

In speaking to this subject in its oral decision the superior court further observed:

There is clear and convincing evidence that if the court were to accept [Fred's] calculations and reported income, there would be manifest injustice that would result. It would be based upon incorrect income and it would deny appropriate and adequate levels of support to his children.

For the tax year 1990, Fred reported an adjusted gross income of $17,255. For the tax year 1991, Fred reported an adjusted gross income of negative $1,192.

13. For example, in *Adrian v. Adrian,* 838 P.2d 808 (Alaska 1992), we stated that "Civil Rule 52(a) requires the trial court to 'find the facts specially and state separately its conclusions of law.'" *Id.* at 811. We further stated:

A trial court's findings must be sufficiently detailed and explicit to give an appellate court a clear understanding of the ground on which the trial court reached its decision. If the trial court fails to provide such findings, this court will remand the case to the trial court for more specific findings.

*Id.* (quoting *Sloan v. Jefferson,* 758 P.2d 81, 86 (Alaska 1988)). We then noted that the superior court failed to provide the raw numbers necessary for a Civil Rule 90.3 calculation, and that the superior court appeared to rely too heavily on findings of fact and conclusions of law prepared by the attorneys. *Id.* at 812 & n. 7. Thus, we remanded the case to the superior court for further findings. *Id.; see also Wright v. Gregorio,* 855 P.2d 772 (Alaska 1993).

rior court's task of determining child support levels based upon imputed potential income is a difficult one. However, on remand it is incumbent upon the trial court to enter sufficiently detailed findings of fact which disclose its methodology, as well as the factual basis, for its determination of the appropriate imputed potential income level for the obligor-parent.

### E. Whether the Superior Court Abused its Discretion in Allocating Visitation Related Expenses

In its conclusions of law the superior court ruled that Fred "continues to be obligated to pay all expenses associated with visitation." Civil Rule 90.3(g) gives the superior court the discretion to allocate travel expenses among the parties "as may be just and proper for them to contribute."[14] Fred argues that he is having financial difficulties and that these difficulties have been compounded by the trial court's award of child support. He further contends that there is an absence of findings that his present economic situation, when compared with that of Sharon, warrants assessment of the total transportation costs to him.

Although we are not persuaded that the superior court's allocation of visitation expenses is erroneous, given the fact that the superior court's determination of Fred's adjusted income is vacated and remanded for further proceedings, we think it appropriate that on remand the superior court review its expense-allocation decision in light of its redetermination of Fred's adjusted income and the parties' relative current financial situations.

### F. Whether the Superior Court's Attorney's Fees and Cost Award to Sharon Constitutes an Abuse of Discretion

Fred takes exception to the superior court's findings that he failed to object to the necessity and reasonableness of Sharon's attorney's fees and costs. Our review of the record persuades us that on remand the superior court should afford Fred the opportu-

nity to address the reasonableness of the attorney's fees and costs claimed by Sharon. The court's award of attorney's fees and costs is therefore vacated and the matter is remanded for further proceedings.

## V. CONCLUSION

The superior court's decree is AFFIRMED in part, REVERSED in part, and the case REMANDED for further proceedings consistent with this opinion. We affirm the superior court's rulings that Fred was voluntarily underemployed and that his accounts receivable were properly characterized as income for purposes of determining Fred's adjusted income under Civil Rule 90.3.

We reverse the superior court's ruling that gifts received by Fred were income for purposes of calculating child support under Civil Rule 90.3; we reverse the superior court's failure to allow Fred to take a deduction for straightline depreciation limited to those portions of Fred's residence which are used in conjunction with his machinery business; and vacate the superior court's award of attorney's fees and costs to Sharon in order to afford Fred the opportunity to address the reasonableness of this award.

Upon remand the superior court is to enter sufficiently detailed findings of fact and conclusions of law as to its methodology, and the factual basis for its determination of imputed potential income to Fred from his machinery and bulldozer businesses. Additionally, the superior court should reconsider its allocation of visitation expenses to Fred in light of its redetermination of Fred's support obligations.

---

**14.** Civil Rule 90.3(g) states that:
After determining an award of child support under this rule, the court may allocate reason-

able travel expenses which are necessary to exercise visitation between the parties as may be just and proper for them to contribute.