[No. F029835. Fifth Dist. Sept. 28, 1999.]

COUNTY OF KERN, Plaintiff and Appellant, v.
EDWARD RICHARD CASTLE, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part A of the Discussion.

COUNSEL

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White, Assistant Attorney General, and M. J. Hamilton, Deputy Attorney General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

OPINION

WISEMAN, J.—In this case we address whether the trial court erred when it nearly excluded from gross income the consideration of benefits enjoyed

by a father following the inheritance of his mother's $1 million estate, including a $240,000 lump sum. The net result of the father's good financial fortune was his $341 child support obligation went up to $361—a meager $20 increase per month. Plus, he now lives mortgage free, has paid his back taxes, has potential rental income on two properties in the amount of $2,000-plus, and, in addition to the rental properties, owns his mother's mortgage free home in Long Beach, and a country cabin in San Bernardino County.

We conclude the father's inheritance is not income for purposes of calculating his annual gross income, pursuant to Family Code section 4058, subdivision (a)(1). However, his newly found wealth may be considered pursuant to Family Code section 4058, subdivision (a)(3), and its "corresponding reduction in living expenses." Under the circumstances here, it was an abuse of discretion for the trial court to not factor anything other than the rental income into its support determination.

PROCEDURAL AND FACTUAL HISTORY

On May 25, 1994, the Kern County District Attorney (County or appellant) filed a complaint to establish paternity and a child support order against Edward Richard Castle, on behalf of Kishoria S., born May 6, 1985. After service of the complaint was made, Castle failed to file an answer, and default was entered on February 28, 1996.

After the parties stipulated to DNA testing, the test results of May 6, 1996, confirmed Castle was Kishoria's father. Following two continuances, the matter was heard on August 23, 1996, at which time Castle stipulated to paternity. On May 24, 1996, Castle's mother died, leaving him as the sole heir of her estate. Castle, a 53-year-old customer service specialist/truck dispatcher with 20 years' experience, left his employment with Pegasus at the time of his mother's death, and formally resigned on July 26, 1996. He did not return to his job because of stress, high blood pressure and heart problems. However, he did not rule out returning to work in the future. When he left his job in May, Castle was earning gross income of $2,500 a month. He had no visitation with Kishoria. The custodial parent, Cheryl S., had a gross monthly income of $3,800.

Castle visited Kishoria at the hospital when she was three days old. He also saw her once at his mother's house. He had no relationship with her, but his mother did. The custodial mother tried to establish paternity/support against Castle in 1987, when Kishoria was two years old, but was unsuccessful. Until this action, Castle had paid no child support at all.

The court issued its order after hearing on September 27, 1996, setting temporary child support at $341 monthly, calculated as follows: custodial parent's gross income was $3,800 monthly; imputed gross income of $2,500 to Castle, who had voluntarily quit his job that paid $2,500 monthly, with 20 years of experience; and zero percent visitation factor for Castle. The issue of the impact of Castle's inheritance on his ability to pay child support was continued to November 18, 1996.

After another continuance, a hearing was held on January 13, 1997. Following argument on whether the expected inheritance by Castle should be factored into the child support determination, the matter was yet again continued because the estate of Castle's mother had not been finalized.

On June 15, 1997, a hearing was held. At that time, it was learned that Castle's mother's estate had been disbursed in February 1997. In addition to real property, Castle received $240,000 in cash which, by the time of the hearing, he had already spent. Following argument, the court ruled the $240,000 inheritance was not gross income within the meaning of the Family Code[1] for child support purposes. The matter was continued to June 25, 1997, for further hearing on Castle's income.

Castle's updated "Income and Expense" declaration stated he was self-employed in property management, and his gross income was $514 monthly, based on a 12-month gross of $6,171. He declared household expenses of $3,875.48 a month. He listed no mortgage or rent payments, or any outstanding debts. He included a spouse, but not her income. He also mentioned two minor children and one adult child (Ashley, nine; Daniel, three; Susan, twenty-one) living in the home.

At the continued hearing on June 27, 1997, Castle testified he was currently married. His wife works outside the home and earns $1,425 monthly. She pays the health insurance premiums for the family through her job, and recently purchased a new vehicle.

Castle testified he received approximately $240,000 in inheritance, and spent it all except for a couple thousand dollars. He used the money to pay back taxes; he paid off the mortgage on his house, and put some money into his new inherited rental properties. His monthly mortgage payments had been $1,150. The rentals he inherited consisted of two homes at 736 Walnut in downtown Long Beach, which together, produced rent of $1,100 monthly; and a single-family house in Lakewood at 4533 Petaluma Street which rented for $1,150. Neither property had a mortgage. Castle only paid property taxes, insurance, and utilities on the Walnut property. There was also a

---

[1]All statutory references are to the Family Code unless otherwise indicated.

vacancy factor present in rentals. Castle considered himself more of a "plain laborer" than a property manager. He put people into the rentals, obtained estimates on painting, and worked on the grass and plants. However, he did not paint, do electrical work or repair projects.

In addition to the rentals, Castle inherited his mother's former residence, a house with no mortgage, located on Ridgeway in Long Beach. He only paid property taxes, utilities and insurance on it. He had not decided whether to sell or keep this house as a rental. If rented, Castle estimated it would rent for $1,000 a month. Also, Castle inherited a country cabin in San Bernardino County, which had some unimproved lots at the same location. Castle testified the cabin would need major repairs to make it rentable. He had not decided whether to sell this property or keep it as a rental.

On October 30, 1997, the court set permanent support at $361 monthly. Upon request by the County, the court issued a statement of decision on December 11, 1997. That same day, the court issued its judgment, setting permanent support at $361 a month effective June 1, 1997. The findings regarding the support order calculation were as follows:

"(a) The custodial parent of the minor child, Cheryl Lynn S[.], shall be assigned: a federal tax filing status designation as married-filing-jointly with three federal tax exemptions, a gross salary or wage income in the amount of $3,835.00 per month, mandatory union dues of $50.00 per month, a mandatory retirement/pension contribution in the amount of $238.00 per month, and health insurance premiums in the amount of $7.00 per month, which result in a net disposable income in the amount of $2,832.00 per month[.]

"(b) The Defendant, Edward Richard Castle, shall be assigned: a zero percent visitation factor with regard to the minor child, a federal tax filing status designation as a married-filing-jointly with four federal tax exemptions, self-employed income in the amount of $2,950.00 per month, new spouse income in the amount of $1,425.00 per month, health insurance premiums in the amount of $36.00 per month, a property tax expense with regard to his family residence in the amount of $186.00 per month, and two hardship deductions in the amount of $721.00 per month in connection with two biological minor children residing with the Defendant, which result in a net disposable income in the amount of $1,442.00 per month.

"(c) Although at the time of the August 23, 1996 hearing, the court made a specific finding that Defendant has an ability to earn a gross wage in the amount of $2,500.00 per month . . . , the court shall make a further finding that Defendant's current occupation is the full-time management of the real property he inherited from his mother.

"(d) Respondent's mother died on May 24, 1996, and named him as the sole beneficiary of her estate. The primary issue throughout these hearings has been to determine the amount of monies disbursed to Defendant and whether monies received as an inheritance, whether from a will or trust, are includible for purposes of calculating Guideline child support. Ultimately, Defendant received approximately $240,000 in February of 1997 along with two residential rental properties and his mother's residence. The court made a finding that monies received as an inheritance, whether from a will or trust, are property and are excluded as income for purposes of calculating Guideline child support. The monthly net profit from the rental properties in the amount of $2,950.00 per month shall be attributed to Defendant as his monthly income in lieu of the court's prior finding of an imputation of his ability to earn $2,500.00 per month."

Timely notice of appeal was filed by County. Appellant contends the trial court erred when it totally excluded from Castle's gross income any consideration of his $240,000 lump-sum inheritance.

DISCUSSION

A. *Introduction and standard of review*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Plain statutory language*

Section 4058 provides:

"(a) The annual gross income of each parent means income from whatever source derived, except as specified in subdivision (c) and includes, but is not limited to, the following:

"(1) Income such as commissions, salaries, royalties, wages, bonuses, rents, dividends, pensions, interest, trust income, annuities, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, social security benefits, and spousal support actually received from a person not a party to the proceeding to establish a child support order under this article.

"(2) Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business.

"(3) In the discretion of the court, employee benefits or self-employment benefits, taking into consideration the benefit to the employee, any corresponding reduction in living expenses, and other relevant facts.

*See footnote, *ante,* page 1442.

"(b) The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children.

"(c) Annual gross income does not include any income derived from child support payments actually received, and income derived from any public assistance program, eligibility for which is based on a determination of need. Child support received by a party for children from another relationship shall not be included as part of that party's gross or net income."

As can be seen, cash or property obtained through an inheritance is not specifically covered by section 4058. As appellant acknowledges, references to "inheritances" do not appear in the guideline statutory scheme. (See § 4050 et seq.) Appellant also points out that no California case law addresses whether an inheritance factors into a parent's gross income.

However, one California case has held that lottery winnings, which were paid in one lump sum, did constitute income for purposes of child support under the predecessor statute to section 4058, former Civil Code section 4721. (See *County of Contra Costa* v. *Lemon* (1988) 205 Cal.App.3d 683 [252 Cal.Rptr. 455].) In *Lemon*, the custodial parent, Melody Leonard, received AFDC (Aid to Families with Dependent Children) benefits for her child. The child's father, Neal Lemon, earned an annual estimated income of $7,000 from doing odd jobs, but had never paid child support following his separation in 1983 from Leonard. In 1986, Lemon won $100,000 in the state lottery, receiving the net proceeds of $75,000. As part of the dissolution proceedings, $15,000 of that sum was placed in a trust account. The county intervened and sought AFDC reimbursement. The trial court, as in this case, found the lump sum received was property, not income, for purposes of calculating Lemon's support obligation. However, it imputed as income to Lemon the interest he would have earned if he had invested it instead of spending it. Lemon was ordered to pay $175 a month for child support. The county appealed. (*Id.* at pp. 685-686.)

The Court of Appeal noted that under the AFDC program, lump-sum earned or unearned income is considered in calculating eligibility for benefits. The court reasoned that if Leonard had won the lottery, the lump sum would have been considered in calculating eligibility for AFDC benefits for the child. Consequently, it concluded that Lemon's lottery proceeds should be considered as income in determining his obligation to provide child support, and the trial court erred by failing to include them.

" 'A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life. . . . [A]

parent's circumstances and station in life are dependent upon a variety of factors, including his or her earned and unearned income . . . .' [Citations.]

"Consistent with AFDC standards, the state has established minimum mandatory child support. (. . . Welf. & Inst. Code, § 11452.) In determining the parents' ability to pay this minimum child support and to calculate the actual monthly payments each parent must make, the court must determine the annual gross income of each parent. [Citation.] Under these provisions, 'annual gross income means income from whatever source derived,' other than income from child support payments actually received and from public assistance. [Citation.] The Legislature has provided that annual gross income 'includes, but is not limited to' salaries, bonuses, interest, worker's compensation benefits, unemployment insurance benefits, and disability insurance benefits. [Citation.] The statutory definition of a term as 'including' listed items does not necessarily limit the original term to the listed inclusions. [Citation.] The statute does not specifically include lottery winnings within the definition of income, but the broad reach of the statute satisfies us that the Legislature intended to include such items as lottery winnings within its reach. (See, e.g., [Civ. Code,] § 4721, subd. (a)(3) [liquidated value of investment assets may be income in certain situations].)" (*County of Contra Costa* v. *Lemon, supra,* 205 Cal.App.3d at p. 688.)

It is not clear whether *Lemon* is limited to cases involving either AFDC benefits or where failing to consider assets would lead to a support order which is less than the minimum AFDC grant would be under the circumstances. However, there is no question the circumstances played a major role, perhaps the pivotal role, in the court's decision. The court observed the standard of need established for AFDC payments and the amount of mandatory minimum child support that a noncustodial parent should pay are interrelated. (*County of Contra Costa* v. *Lemon, supra,* 205 Cal.App.3d at p. 689.) The court also noted that, generally, the county provides AFDC to custodial parents and their dependent children to the extent the noncustodial parent's support payments fall below the mandatory minimum child support level. (*Ibid.*) "Because of this connection, it is reasonable to employ the same definitions of income for calculating . . . child support obligations . . . ." (*Ibid.*) During the relevant period, 1983 to 1986, the minimum basic standard of adequate care for one child was $258 (currently, $341). (See Welf. & Inst. Code, § 11452.) Thus, the $175 ordered by the trial court in *Lemon* was less than the AFDC standard. Finally, *Lemon* held the "trial court retains discretion to set the amount of child support, as long as this amount does not fall below the statutory minimum" under Welfare and Institutions Code section 11452. (*County of Contra Costa* v. *Lemon, supra,* 205 Cal.App.3d at p. 689.)

Here, the custodial parent was not receiving, and never did receive AFDC benefits for Kishoria. Her income at the time of the hearing was $3,800 a month. Further, the permanent child support order for Castle is $361, higher than the minimum basic standard under the AFDC statute. Thus, his actual income is sufficient to cover the minimum basic standard without having to consider any of his assets. To this extent, this case is distinguishable from *Lemon*.[2] If Kishoria were being supported by AFDC benefits and Castle's actual income were insufficient to provide the minimum basic standard, *Lemon* would be controlling, and the trial court would have had to consider the inheritance received by Castle in determining child support. ▆ However, under the circumstances, the trial court had discretion in deciding whether to consider the inheritance Castle received as income since it is not specifically listed in section 4058.

This discretion is derived from subdivision (a)(3) of section 4058, which provides: "In the discretion of the court, employee benefits or self-employment benefits, taking into consideration the benefit to the employee, any corresponding reduction in living expenses, and *other relevant facts.*" (Italics added.) Although it makes reference to employment benefits, this provision has been held to apply to benefits that are similar. In *Stewart* v. *Gomez* (1996) 47 Cal.App.4th 1748, 1755 [55 Cal.Rptr.2d 531], the court held there was no reason to distinguish an employee housing benefit from an Indian reservation housing benefit "because both result in a 'reduction in living expenses' and therefore in an increase in money available for child support." Thus, the trial court here could have discretionarily considered as income the mortgage-free housing Castle was living in because he paid the mortgage off with part of the proceeds from his inheritance. This constituted a reduction in living expenses like that in the *Stewart* case.

## C. *Sister state authority*

Before deciding whether the court abused its discretion by failing to consider anything other than Castle's rental income in calculating child support, we examine authority from other jurisdictions. Appellant contends that decisions from other jurisdictions with similar support statutes indicate an inheritance is income, not property, as held by the trial court.

---

[2]The court, in *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988 [64 Cal.Rptr.2d 383], distinguished the case of *County of Yolo* v. *Garcia* (1993) 20 Cal.App.4th 1771 [25 Cal.Rptr.2d 681] on similar grounds. *Hinman* did not involve restitution for AFDC benefits, while *Garcia* did. The *Hinman* court held that ". . . unlike child support under Family Code section 4058, the principal purpose of the reimbursement statute is to 'preserve the public fisc.'" (*In re Marriage of Hinman, supra,* 55 Cal.App.4th at p. 1000.) It noted that under section 4058, the best interests of the child on whose behalf benefits are collected are paramount.

Appellant cites *Gainey v. Gainey* (1997) 89 Wn.App. 269 [948 P.2d 865], a Washington case which involved an inheritance between $59,000 and $95,000. There, however, it was the custodial parent, Dona, who received the inheritance. She argued her inheritance should not be considered income, and the trial court agreed. (*Id.*, 948 P.2d at p. 867.) The father, Albert, appealed, contending the trial court erred by not including Dona's inheritance in calculating child support. The court rejected Albert's contention as follows: "[I]n Washington's child support statute . . . 'gross monthly income' does not include gifts. It does, however, include '[i]nterest.' Because an inheritance is essentially a testamentary gift, we hold that the corpus of an inheritance is not included in a parent's gross income, but that the interest generated by an inheritance is. Thus, the trial court was not obligated to include the corpus of Dona's inheritance in her gross income. It was obligated to include interest currently being generated by the inheritance, if any—but neither side proved that there was any interest, much less its amount. We conclude that the trial court did not err in ruling as it did." (*Id.* at p. 869, fns. omitted.)

In *Nass v. Seaton* (Alaska 1995) 904 P.2d 412, the noncustodial parent, Fred Nass, appealed from a child support order in which money given to him by his parents was considered income. The Alaska Supreme Court reversed after reviewing several authorities from other state jurisdictions, stating: "Review of authorities addressing the question of whether gifts to the obligor parent should be considered income for purposes of determining the level of the obligor's support obligation leads us to the determination that the principal amount of gifts and inheritances should not be considered as income for purposes of Rule 90.3. We are persuaded that any other approach blurs the easily administered and well-established historical distinction between gifts and earned income. In short, we conclude that the authorities which refuse to recognize the inclusion of gifts in determining the level of the obligor's adjusted gross income for purposes of calculating a child support obligation represent the correct rule of law. We therefore hold that it was error for the superior court to include any gifts from Fred's parents in calculating his child support obligation under Civil Rule 90.3." (*Nass v. Seaton, supra,* 904 P.2d at p. 416, fn. omitted.)

The court left open whether the gifts received by Fred could be considered in the support calculation on remand if the custodial parent could prove by clear and convincing evidence that the failure to do so would result in a manifest injustice. (*Nass v. Seaton, supra,* 904 P.2d at p. 416, fn. 8.)

In *In re Marriage of Armstrong* (Colo.Ct.App. 1992) 831 P.2d 501, the trial court included in the support calculation imputed income of 9 percent

interest on an inheritance received by the noncustodial father. As here, the father had used up much of the inheritance amount by the time of trial. (*Id.* at p. 502.) The appellate court held the trial court correctly included as part of the father's income a sum that the inheritance could be expected to have yielded, but disagreed on the amount which could be considered. The court relied on evidence that the father's debts had been reduced, and consequently, his income had been increased by using the inheritance to pay off significant debts, including a $140,000 mortgage on his residence. (*Id.* at p. 503.)

Appellant concedes that in this case the court was right in principle. Two recent California appellate court cases support this concession. In *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 529 [70 Cal.Rptr.2d 488], the court stated in dicta that gifts are not income. "Gifts are not mentioned in section 4058, and, judging from the use of language lifted straight from the Internal Revenue Code, should logically be outside the purview of the child support statute. Gross income, in federal tax law, does not include gifts." (*Ibid.,* fn. omitted.) In *In re Marriage of Rocha* (1998) 68 Cal.App.4th 514 [80 Cal.Rptr.2d 376], the court distinguished the *Stewart* case (*Stewart* v. *Gomez, supra,* 47 Cal.App.4th 1748) when it held that a student loan is not income under section 4058, noting that unlike a housing benefit, there is an expectation of repayment or reimbursement for a loan. "Thus, we do not find a loan for education which includes proceeds over that required for books and tuition to be income for purposes of section 4058." (*In re Marriage of Rocha, supra,* at p. 517.)

However, appellant argues that while the trial court was correct in principle, it was incorrect in its application. Appellant first argues the trial court had to impute interest on the $240,000 lump-sum inheritance to Castle's gross income. This is because Castle had no actual interest, and parents have a duty to use available financial resources to support their children. Appellant subsequently concludes that if a parent fails in this duty, the court should impute income from such a resource to that parent on behalf of the child. Thus, it is unclear whether appellant is arguing the statute requires imputation of interest as income, or whether the trial court had discretion to do so and merely abused that discretion here.

The language of the statute and the cases discussed above lead to three conclusions: (1) one-time gifts or inheritances are not income; (2) interest, rents, dividends, etc., which are actually earned from gifts or inheritances, are income for purposes of child support; and (3) imputation of income based on the inheritance corpus or on interest the sum could have earned if invested, may be considered income in calculating support in the

court's discretion. Thus, appellant is incorrect in contending the trial court had to include the inheritance sum and interest it could have earned if invested, in calculating support. As noted in *Nass* v. *Seaton, supra,* 904 P.2d at page 416, the majority of sister state authorities do not support appellant's contention. Further, because it involved a support order in an amount lower than AFDC minimum benefits, *Lemon* is distinguishable from this case. Thus, the trial court did not err by concluding the lump-sum inheritance was not income but that interest earned from the inheritance is income.

 We now turn to appellant's contention that the court abused its discretion by failing to consider Castle's improved financial standing as a result of the property he received from his mother's estate in calculating the appropriate child support.

### D. *Public policy*

Appellant contends the trial court violated public policy under its support calculation because public policy calls for a child to share in the lifestyle of both parents. This policy is expressed in section 4053, which provides, in pertinent part:

"In implementing the statewide uniform guideline, the courts shall adhere to the following principles:

"(a) A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life.

"(b) Both parents are mutually responsible for the support of their children.

"(c) The guideline takes into account each parent's actual income and level of responsibility for the children.

"(d) Each parent should pay for the support of the children according to his or her ability.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f) Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(i) It is presumed that a parent having primary physical responsibility for the children contributes a significant portion of available resources for the support of the children.

"`.` . . . . . . . . . . . . . . . . . . . . . . .

"(*l*) Child support orders must ensure that children actually receive fair, timely, and sufficient support reflecting the state's high standard of living and high costs of raising children compared to other states."

Appellant points out that when the temporary support order was set at $341 a month in 1996, it was based on Castle's $2,500 a month salary at Pegasus. "A year later, *after* [Castle] inherited his mother's $1 million estate the court put his permanent support order in place: $361 monthly." Appellant notes this was about 5 percent more a month, and argues that Kishoria in no way shared in her father's improved standard of living,[3] in violation of California public policy. Considered in this light, appellant presents a strong case for finding an abuse of discretion.

Here, the court did not consider any of the lump-sum inheritance of $240,000 as an income resource, as it had discretion to do. (*County of Contra Costa* v. *Lemon, supra,* 205 Cal.App.3d at p. 689.) Further, after Castle spent the entire sum between hearing dates, the trial court did not impute interest income to Castle that the sum could have earned if invested, which the court recognized it had discretion to do. (*Id.* at p. 686; see also *Nass* v. *Seaton, supra,* 904 P.2d at p. 416, fn. 8; *In re Marriage of Armstrong, supra,* 831 P.2d at pp. 502-503.) In addition, the court did not take into account Castle's reduction in living expenses as a result of his having paid off his mortgage with the inheritance sum. It had discretion to do so under subdivision (a)(3) of section 4058, as construed in *Stewart* v. *Gomez, supra,* 47 Cal.App.4th at page 1755. In *Stewart,* the court held there was no reason to distinguish an employee housing benefit from an Indian reservation housing benefit "because both result in a 'reduction in living expenses' and therefore in an increase in money available for child support." (*Ibid.*; see also *In re Marriage of Armstrong, supra,* 831 P.2d at p. 503.) Finally, the court did not impute salary income of $2,500, which Castle could have earned if he had not left his job, as it had discretion to do in the best interests of the child. (See § 4058, subd. (b); *In re Marriage of Hinman, supra,* 55 Cal.App.4th at pp. 998-999.)

Regarding the lump-sum inheritance, the only basis for not considering it as income or an available resource was the court's conclusion that it constituted property and not income. It is unclear whether the court recognized that it could discretionarily consider a lump-sum inheritance consistent with the policies of section 4053. To the extent it did not, a remand is appropriate. To the extent the court realized it had discretion, the finding the inheritance was property and not income is no reason to not consider it.

---

[3]The court found that after receiving the sum of $240,000, Castle's monthly expenses and debts were "substantially reduced," and "his standard of living improved."

With respect to potential income from investment of the sum, the court simply decided against considering it as imputed income without articulating any reasons. It stated "only actual and not an imputed ability to earn an income from the lump sum disbursement . . . shall be included as income . . . ."

Although the court found the money received was used to substantially reduce Castle's debts, thus improving his standard of living, the court gave no reasons why the mortgage reduction, which gave Castle an additional monthly sum of approximately $1,150 as disposable income, was not factored into the support calculation.

On the decision not to impute income based on Castle's established earning capacity, the court reasoned that Castle had a new occupation of full-time property management. Since Castle's rental income was higher than his earning capacity in his area of employment experience, the failure to impute this income is arguably reasonable. However, appellant makes a strong point that management of Castle's inherited property—three rental houses—is not likely to occupy Castle full time, and he is therefore under-employed. (See *In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331 [66 Cal.Rptr.2d 393] [court properly imputed income to a teacher who was voluntarily teaching only part-time in order to spend more time with her children]; *In re Marriage of Hinman, supra,* 55 Cal.App.4th at p. 988 [court properly imputed income to a parent with a computer science degree when she dropped out of the marketplace to remarry and have three more children]; *In re Marriage of Paulin* (1996) 46 Cal.App.4th 1378 [54 Cal.Rptr.2d 314] [court imputed income to a parent, a registered nurse, who voluntarily reduced her income in order to remarry and have new children]; *In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630 [16 Cal.Rptr.2d 345] [court refused to lower parent's child support when he quit his pharmacy job in order to return to medical school].)

It is unclear why the court was unwilling to allow Kishoria to share in her father's good fortune of having inherited a tremendous amount of money and real property assets. Perhaps it was because Castle did not substantially increase his monthly income, and Kishoria was well taken care of by her mother, who earned more than Castle. Still, under the current support order, Kishoria will not benefit from the substantial assets Castle received. There is no basis for concluding this was somehow in her best interests. The court failed to articulate any reasons why this would be so. Thus it fell "far short of providing *reasons* why the level of support . . . awarded is consistent with the child's interests as required by section 4056, subdivision (a)(3)." (*McGinley* v. *Herman* (1996) 50 Cal.App.4th 936, 945 [57 Cal.Rptr.2d 921].)

As stated in *White* v. *Marciano* (1987) 190 Cal.App.3d 1026, 1031-1032 [235 Cal.Rptr. 779]:

"The Agnos Child Support Standards Act of 1984 establishes a system of mandatory minimum child support amounts. [Citation.] When appropriate, a higher amount of child support may be awarded. In setting a higher level of child support, the court 'shall be guided by the criteria set forth in applicable statutes, relevant case law . . . and the legislative intent that children share in their parents' standard of living . . . .' [Citation.]

"A child is to be supported in the manner suitable to the child's circumstances, taking into consideration the parents' respective earnings or earning capacity of the parties. [Citation.]

"Generally, children are entitled to be supported in a style and condition consonant with the position in society of their parents. [Citation.] A parent's duty of support does not end with the furnishing of mere necessities if the parent is able to afford more. Support must be reasonable under the circumstances. [Citation.] How much 'more,' i.e., what amount is 'reasonable' is defined in relation to a child's 'needs' and varies with the circumstances of the parties. [Citation.]

". . . . . . . . . . . . . . . . . . . . . . . . .

"The standard of living to which a child is entitled should be measured in terms of the standard of living attainable by the income available to the parents rather than by evidence of the manner in which the parents' income is expended and the parents' resulting lifestyle. It matters not whether the respondent, noncustodial parent miserly hoarded his $1 million per year income and lived the life of a pauper or whether he lived the life of a prince spending every cent of the available income."

In reviewing for an abuse of discretion, we may not substitute our judgment for that of the trial court. (*In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128 [70 Cal.Rptr.2d 109].) We can "only determine if any judge reasonably could have made such an order." (*Ibid.*) Under this standard, at a minimum, the court should have taken into consideration the additional disposable income Castle enjoyed monthly by having paid off the mortgage on his home. The decision not to factor anything other than the rental income into the support determination was an abuse of discretion in light of the principles and directives set forth in section 4053. With the exception of the reason for not imputing income based on Castle's proven earning capacity, the court provided no explanation why Castle's tremendously improved financial worth as a result of his inheritance would not be

considered. While a lack of a statement of reasons makes appellate review more difficult, it is clear that Kishoria will not share in Castle's wealth. Absent reasonable justification by the trial court, this result does not, on this record, appear to be in her best interests. Therefore, the trial court did not follow the mandate that "make[s] it very clear that the child is entitled to share . . . her parents' standard of living." (*In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 54 [272 Cal.Rptr. 560].)

### DISPOSITION

The judgment is reversed and remanded with directions that the trial court consider each of the appropriate factors discussed above and determine whether any or all of them should be included as income for purposes of determining the appropriate child support order. If the trial court concludes any factors should not be included, it must state reasons why it would not be in the best interests of the child or in the overall interests of justice to include them.

Harris, Acting P. J., and Stone (W. A.), J.,\* concurred.

On October 28, 1999, the opinion was modified to read as printed above.

---

\*Retired Associate Justice of the Court of Appeal, Fifth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.