William E. OLMSTEAD, Appellant,

v.

Elizabeth A. ZIEGLER, Appellee.

No. S–9481.

Supreme Court of Alaska.

March 8, 2002.

William E. Olmstead, pro se, Juneau, Appellant.

Elizabeth A. Ziegler, pro se, Juneau, Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

This is an appeal from the denial of a motion to modify child support. Under the trial court's original order, the parties shared custody of their child and neither paid child support to the other. The trial court determined that a modification of child support was not warranted because the father, William Olmstead, was voluntarily underemployed and his earning capacity had not changed. We conclude the trial court did not err in finding that Olmstead was voluntarily underemployed, and we affirm the denial of the motion to modify child support.

## II. FACTS AND PROCEEDINGS

### A. Factual History

William Olmstead and Elizabeth Ziegler married in August 1989. Their only child, Lauren, was born in January 1990. They divorced in December 1994. The parties, both of whom are attorneys, entered into a settlement agreement that was incorporated into the divorce decree. The agreement provided for joint legal and physical custody of their daughter and specified that neither party would pay child support to the other. However, Olmstead did agree to pay for their daughter's daycare and education expenses. Their daughter no longer requires constant daycare, and she now attends public schools. Olmstead estimates that he spends approximately $80 per month on child care.

At the time of the divorce, the parties submitted a child support affidavit, as required by Alaska Civil Rule 90.3(3). Olmstead's estimated 1994 annual gross income was $53,000 and Ziegler's was $25,000. Ziegler's estimate proved to be high, as she actually earned $16,753 in 1994. Ziegler was subsequently hired as an attorney with the firm of Baxter, Bruce & Brand in Juneau, where her annual income increased significantly. In 1998, she earned $53,761.

In August 1996 Olmstead's law partner of several years, Patrick Conheady, left the partnership. Conheady claimed that Olmstead was unproductive and frequently played card games on his computer instead

of working on his cases. Olmstead became a solo practitioner. While he sought other positions and applied for several state jobs, he was apparently unsuccessful in obtaining other employment. Olmstead's income decreased significantly during this period. In 1996 his income dropped to $10,157. In 1998 he earned $13,075.

In March 1999 Olmstead informed his friends and colleagues in Juneau that he would be leaving the practice of law, as he had decided to go back to school to become a teacher. In order to make ends meet in the meantime, he offered his legal research and writing services to other attorneys. Olmstead has since remarried. Ziegler remains single.

### B. Procedural History

On June 3, 1999, Olmstead filed a motion for an order modifying child support under Civil Rule 90.3. On October 28, 1999, the trial court denied Olmstead's motion for modification of child support, noting that Olmstead had not provided the necessary income verification documents. Olmstead moved for reconsideration, and on November 16, 1999, the trial court issued an order simultaneously granting Olmstead's request for reconsideration and denying his motion to modify child support. The trial court found that, although their financial situations may have changed, the parties still possessed equal earning capacities. The trial court also reasoned that, although Olmstead was free to change careers, he was not entitled to a modification of child support: "[Olmstead] has elected to learn new things for a while, and perhaps take on a new career. He is free to do so, but under our case law [Ziegler] and the child are not expected to finance these choices." Olmstead appeals.

1. *Patch v. Patch*, 760 P.2d 526, 529 (Alaska 1988).

2. *Schuyler v. Briner*, 13 P.3d 738, 741 (Alaska 2000).

3. *Id.* (quoting *State, Dep't of Revenue v. Pealatere*, 996 P.2d 84, 86 (Alaska 2000)).

### III. STANDARD OF REVIEW

 Trial courts have broad discretion in deciding whether to modify child support orders.[1] A trial court's determination of whether to modify child support will be reviewed for abuse of discretion.[2] An abuse of discretion occurs when, based on a review of the whole record, we are "left with a definite and firm conviction that a mistake has been made."[3] Under Alaska Civil Rule 52(a),[4] factual findings will not be set aside unless they are clearly erroneous.[5]

### IV. DISCUSSION

#### A. The Trial Court Did Not Err in Finding that Olmstead Was Voluntarily Underemployed.

Olmstead claims that the court erred in finding that he was voluntarily underemployed and contends that the court improperly relied upon his decision to change careers in making that finding. Olmstead points out that he did not ask for a modification of child support based upon his income as a student or teacher. Rather, he requested a modification based entirely upon his earnings while he was a practicing attorney. He thus claims that it was improper for the trial court to rely on his career change when he did not make it a basis for his motion. Olmstead adds that he made a mistake by choosing law as a profession, and that he lacks the personality traits necessary for success in the field. He claims that he was "not capable of even moderate success as a solo practitioner, and no other options were available to him."

Ziegler counters that Olmstead's lack of success in law and subsequent move to teaching are the results of his voluntary actions. She points to the fact that Olmstead's former law partner left the partnership because Olmstead had greatly reduced his productivity. Olmstead apparently began to scale back his practice as early as February of 1998.

4. Civil Rule 52(a) provides in part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

5. *Nass v. Seaton*, 904 P.2d 412, 414 (Alaska 1995).

He cancelled his advertisement in the yellow pages and did not maintain regular business hours. Ziegler suggests that Olmstead instead spent his time running marathons and remodeling his home. She claims that this evidence shows Olmstead voluntarily withdrew from the practice of law. Ziegler relies upon *Pattee v. Pattee*, in which we reversed the reduction of a child support award to accommodate the father's decision to become a student.[6] She contends that this case should follow *Pattee's* mandate that the custodial parent should not be forced to finance the noncustodial parent's career change.[7]

The trial court concluded that Olmstead's decision "to quit the private practice of law and undertake training for a new career cannot be viewed as anything but a voluntary move on his part." The court found that Olmstead's career change constituted voluntary underemployment. The trial court also concluded that Olmstead's underemployment was unreasonable:

> This record can only support a conclusion that [Olmstead] was merely *unhappy* with the private practice of law and ... has withdrawn from it. There is no foundation from which to conclude that [Olmstead] could not earn exactly what [Ziegler] now earns from law practice, if not more, should he have found himself willing to so apply his skills and experience.... Further, it does not appear reasonable for [Olmstead] to reenter the education system to train for a position that is *less* remunerative than that his current education and experience justifies. No moral criticism of [Olmstead's] lifestyle change is intended, but the Court will not shift any of the consequent burden to the narrow shoulders of this child.

■ Voluntarily reducing one's income may not justify a modification of child support.[8] Determining whether or not a parent is voluntarily and unreasonably underem-

ployed is essentially a question of fact.[9] The trial court should consider "the nature of the changes and the reasons for the changes, and then ... determine whether under all the circumstances a modification is warranted."[10] A trial court may find that underemployment is voluntary even if the obligor acted in good faith.[11]

■ We conclude that the trial court did not err in finding that Olmstead was voluntarily and unreasonably underemployed. The evidence before the trial court established that Olmstead took many steps, including closing his office and failing to keep regular business hours, that demonstrated his intent to downsize his practice. He also significantly reduced his workload hoping to obtain a job with the Department of Transportation. In addition, the record contains an affidavit from Olmstead's former partner, Conheady, recounting his difficulties with Olmstead's lack of productivity: Conheady states that he left the partnership because Olmstead was not producing enough billable hours. While Olmstead has repeatedly stated that he was simply a failure at law and was not capable of earning the average lawyer's salary, he has provided scant support for his assertions. In addition, Olmstead's claims that he was unable to make a living practicing law are undermined by the fact that at one time he made over $53,000 a year.

Despite Olmstead's assertions to the contrary, it was permissible for the trial court to consider Olmstead's career change in determining the issue of voluntary and unreasonable underemployment. In its order, the trial court addressed Olmstead's career change, remarking that while Olmstead was free to change jobs, Ziegler and their daughter did not have to finance that choice. The trial court is not limited to consideration of the facts and circumstances that Olmstead chooses. We have stated that the trial court should consider the nature of changes in

---

**6.** 744 P.2d 658 (Alaska 1987), *overruled on other grounds by Nass v. Seaton*, 904 P.2d 412, 416 n. 7 (Alaska 1995).

**7.** *See id.*

**8.** *Robinson v. Robinson*, 961 P.2d 1000, 1004 (Alaska 1998).

**9.** *See Vokacek*, 933 P.2d 544, 549 (Alaska 1997).

**10.** *Id.*

**11.** *Robinson*, 961 P.2d at 1004.

income, as well as the reasons for the changes, and then determine whether *under all the circumstances* a modification is warranted.[12] That includes Olmstead's career change.

Moreover, Part III.C of the commentary to Civil Rule 90.3 recognizes that "[w]hen a parent makes a career change, this consideration should include the extent to which the children will ultimately benefit from the change." Thus, it is appropriate for the trial court to consider not only the career change, but also its potential impact on the child. Since Olmstead has failed to prove any benefit to the child from his decision to downsize his practice and change careers, the trial court did not err in finding that a modification is not warranted. It was not error for the trial court to have found that Olmstead was voluntarily and unreasonably underemployed, nor did the court err by considering Olmstead's career change.

### B. The Trial Court Did Not Err in Its Earning Capacity Determination.

■ In a corollary argument, Olmstead also claims that the trial court's determination of earning capacity is clearly erroneous and requires reversal. Olmstead contends that evidence of his earnings while working as a solo practitioner contradicts the court's suggestion that he could have made more had he tried harder. He adds that he is unsuccessful on his own "because his personality [makes] it very difficult for him to develop business." Olmstead maintains that there is no evidence to support the trial court's conclusion that his earning capacity was equal to or greater than Ziegler's.

However, the record supports the trial court's view that Olmstead was not working at his full capacity. The trial court remarked that "[t]here is no foundation from which to conclude that [Olmstead] could not earn exactly what [Ziegler] now earns from law practice, if not more, should he have found himself willing to apply his skills and experience." The trial court added that the parties' earning power was the same as when

the original settlement agreement was signed. The trial court based its view of Olmstead's earning capacity on his actual past earnings as well as on other factors discussed above.

The trial court had before it ample evidence of Olmstead's work history, qualifications, and job opportunities. Although Olmstead would prefer that the trial court calculate his potential income based only on three years of his earnings of his own choosing, the trial court properly considered Olmstead's qualifications as an attorney with substantial experience.[13] The record also contains evidence that Olmstead at one time made over $50,000 per year while practicing law. Implicit in the trial court's evaluation of Olmstead's earning capacity is its rejection of his claims that he is simply not a successful solo practitioner. Also included in the record are Alaska Department of Labor statistics stating that the average income for male attorneys in Alaska is $65,811.

In sum, the trial court's determination that Olmstead had the capacity to earn as much as Ziegler is not clearly erroneous. There is adequate support in the record for this conclusion, and the trial court did not commit error by considering factors other than Olmstead's recent earnings as a solo practitioner.

### C. The Trial Court Did Not Err in Failing to Make Findings and Set Forth Calculations to Support Its Determination.

■ Olmstead next argues that the trial court failed to enter explicit findings about earning capacity and to provide a basis for this court to review the determination. Olmstead claims that the trial court's failure to provide any calculations is fatal and that remand is required. Ziegler responds that it was unnecessary for the trial court to provide calculations because the parties share custody.

---

**12.** *Pattee,* 744 P.2d at 662 (quoting *In re Marriage of Rome,* 190 Mont. 495, 621 P.2d 1090, 1092 (1981)).

**13.** Olmstead graduated from law school in 1984.

Given their equal earning capacities, child support is a wash.[14] The trial court is required to enter sufficiently detailed findings of fact to allow for meaningful appellate review.[15] Here the trial court adequately supported its decision that the parties had equal earning power. Moreover, the cases relied upon by Olmstead are not applicable to this situation—the trial court's findings on earning capacity are sufficient.[16]

## V. CONCLUSION

The trial court did not err when it found Olmstead to be voluntarily underemployed. Furthermore, the trial court did not err when it determined that no modification of child support was warranted. Therefore, the decision of the superior court is AFFIRMED.

CARPENETI, Justice, not participating.

---

14. *See* Civil Rule 90.3(b); Civil Rule 90.3 Commentary III.C.

15. *Nass v. Seaton*, 904 P.2d 412, 418–19, 419 n. 13 (Alaska 1995).

16. For example, in *Beard v. Morris*, we remanded to the trial court for findings on how the trial court valued the military-provided housing at issue. 956 P.2d 418, 420–21 (Alaska 1998). Unlike *Beard*, the trial court in this case made it quite clear how it valued Olmstead's earning capacity; it considered it to be at least the same as Ziegler's—$54,000. As explained above, that finding is not clearly erroneous. Similarly, in *Nass v. Seaton*, we required the trial court to enter "sufficiently detailed findings of fact which disclose its methodology, as well as the factual basis, for its determination of the appropriate imputed potential income level for the obligor-parent." 904 P.2d at 419. The trial court in this case did outline the factual basis for its determination that these two experienced attorneys had equal earning capacities.