La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
En esta ocasión debemos examinar si los bienes que un alimentante adquiere por herencia deben considerarse “in-greso” para efectos de la Ley Número 5 de 30 de diciembre de 1986, según enmendada, conocida como Ley Orgánica de la Administración para el Sustento de Menores, y las Guías para Determinar y Modificar las Pensiones Alimentarias.
*629 I-I
El 23 de agosto de 2005, el peticionario Carlos Fonseca Zayas presentó una demanda solicitando que se le fijara una pensión alimenticia a favor de su hijo menor, quien vivía con su madre, la señora Brenda Rodríguez Meléndez. La señora Rodríguez Meléndez contestó la demanda y re-convino reclamando la custodia legal y la patria potestad del menor, y que se fijara una pensión mayor a la original-mente sugerida por el peticionario.(1) Para ese momento, el menor tenía unos siete meses de nacido.
El foro primario refirió el asunto del monto de la pen-sión a la Examinadora de Pensiones del Tribunal de Pri-mera Instancia y, luego, acogió su recomendación. El 1 de noviembre de 2005, emitió una orden que fijó la pensión alimenticia provisional en $522.05 mensuales.(2) Del in-forme de la Examinadora se deduce que, para ese mo-mento, el peticionario generaba un ingreso neto de $2,009 mensual.
El 28 de febrero de 2008, la Examinadora de Pensiones sometió un Informe que recomendaba unas modificaciones a la pensión y que se diera efecto retroactivo a las nuevas cantidades propuestas. En su Informe, le imputó al peticio-nario un salario neto mensual de $3,000, por lo que reco-mendó una pensión de $723.73 retroactiva al periodo entre el 23 de agosto de 2005 y el 1 de mayo de 2006.(3) También recomendó que se aumentara la pensión a $918.13 men-suales, más plan médico, retroactiva al 1 de mayo de 2006. El efecto de la retroactividad significaría una deuda acu- *630 mulada de $9,535.07. En su cómputo para la segunda can-tidad propuesta como pensión, la Examinadora incluyó como ingreso una herencia que recibió el peticionario cuyos activos ascendían a $170,000 en propiedades y otros bie-nes, y $48,500 en efectivo.(4) Acto seguido, recomendó que se le imputara al señor Fonseca Zayas un ingreso mensual total de $7,075: $3,000 producto del ingreso de su trabajo y $4,500 por concepto de la herencia.(5)
El Tribunal de Primera Instancia acogió el Informe de la Examinadora y fijó la pensión alimenticia en $918.13 mensuales.(6) El 12 de mayo de 2008, la Examinadora so-metió un Informe Enmendado y recomendó que se aumen-tara la pensión alimenticia a $1,956.84. El 19 de mayo de 2008, el foro de instancia acogió esa recomendación. El pe-ticionario Fonseca Zayas solicitó una reconsideración y, en-tre otros asuntos, alegó que los bienes adquiridos por una herencia no deben considerarse “ingreso”, y que, por esa razón, fue un error imputarle un ingreso mensual de $7,075. También alegó que sería injusto y oneroso fijarle una pensión permanente producto de un influjo de dinero que, por su propia naturaleza, no sería recurrente. El foro de instancia declaró “sin lugar” la moción de recon-sideración.
Oportunamente, el peticionario acudió al Tribunal de Apelaciones para solicitar que se revocara la decisión del Tribunal de Primera Instancia que le imputó un ingreso mensual de $7,075 y fijó una pensión alimenticia de $1,956.84. Su argumento principal fue que la definición de “ingreso” contenida en la Ley Número 5 de 30 de diciembre de 1986, según enmendada (Ley número 5),(7) y en las *631 Guías para Determinar y Modificar las Pensiones Alimen-tarias (Guías de 2006),(8) no dispone expresamente que los bienes recibidos por herencia forman parte del cómputo de la pensión. De igual forma, reiteró su argumento de que la herencia, por su naturaleza no recurrente, no debe consi-derarse al fijar una pensión permanente.
El Tribunal de Apelaciones determinó que “[l]a herencia no está excluida de los recursos o medios de fortuna de un alimentante, o sea, del patrimonio total de una persona y, por lo tanto, deben [sic] ser considerados [sic] para fijar la pensión”.(9) El foro intermedio razonó que los ingresos que se mencionan en la Ley Número 5 y en las Guías de 2006 no son los únicos recursos económicos que tiene una persona obligada a prestar alimento, ya que también se to-mará en consideración el capital o patrimonio total del alimentante.(10) El tribunal apelativo resolvió que los acti-vos de una herencia forman parte del patrimonio y, por lo tanto, se utilizarán para determinar la capacidad econó-mica del alimentante para proveer alimentos. No obstante, el Tribunal de Apelaciones revocó la determinación del foro de instancia por entender que éste se equivocó al hacer el cómputo. Mientras el Tribunal de Primera Instancia tomó la porción líquida de la herencia y la dividió entre 12 meses para computar el ingreso mensual del peticionario, el tribunal apelativo determinó que lo correcto era tomar la to-talidad de la herencia, incluso efectivo y propiedades, y dividirlo entre 36 meses. El foro apelativo razonó que, como las pensiones alimentarias se revisan cada tres años,(11) de esta manera se atendía el reparo del señor Fon-seca Zayas en cuanto a la naturaleza no recurrente de la herencia recibida. Es decir, considerando que la pensión *632 tendría una duración de 36 meses y para no atribuirle un ingreso mensual artificial calculado únicamente a base de 12 meses, el Tribunal de Apelaciones optó por dividir la herencia entre el término de duración de la pensión.
Inconforme con esta determinación del Tribunal de Ape-laciones, el señor Fonseca Zayas recurrió ante este Tribunal mediante un recurso de certiorari. El 27 de enero de 2009 expedimos el auto y, en auxilio de nuestra jurisdic-ción, reinstalamos la pensión provisional de $918.13 origi-nalmente impuesta por el Tribunal de Primera Instancia el 28 de febrero de 2008.(12) Ambas partes presentaron sus respectivos alegatos y, con el beneficio de sus comparecen-cias, pasamos a resolver.
II
En nuestro ordenamiento jurídico, los casos sobre alimentos de menores están revestidos del más alto interés público.(13) Hemos manifestado que la obligación alimentaria tiene su fundamento en el derecho constitucional a la vida(14) y en la solidaridad familiar.(15) Por lo tanto, hemos resuelto que, en nuestra jurisdicción, los menores tienen un derecho fundamental a recibir alimentos.(16) Al indagar sobre los orígenes de ese derecho fundamental, hemos señalado el derecho de toda persona “ ‘a disfrutar de un nivel de vida adecuado que asegure para sí y para su familia la salud, el bienestar y especialmente la alimentación, el ves- *633 tido, la vivienda, la asistencia médica y los servicios socia-les necesarios’ (Énfasis en el original.(17)
La legislación puertorriqueña ha canalizado el derecho de los menores a recibir alimentos como parte del mandato constitucional del derecho fundamental a la vida. Hay varias fuentes estatutarias a las que debemos recurrir para analizar los elementos que se deben considerar al fijar una pensión alimenticia a favor de un menor de edad. En primera instancia, la obligación general de proveer alimentos entre parientes está recogida en los Artículos 142 a 151 del Código Civil. (18) En cuanto a hijos e hijas menores de edad sujetos a la patria potestad y custodia de sus padres, debemos recurrir al Artículo 153 del Código Civil.(19) Sobre este particular, hemos resuelto que la obligación que surge del Artículo 153 es parte de los deberes y obligaciones de los padres en el ejercicio de la patria potestad, específicamente en lo que respecta a su deber de alimentar a sus hijos no emancipados.(20) Es decir, cuando se trata de un hijo mayor de edad, emancipado o que, a pesar de seguir siendo menor de edad, no está sujeto a la patria potestad y custodia de uno de sus padres, la obligación de alimentar surge del Artículo 143 y no del Artículo 153.(21) *634 Incluso, se recurrirá al Artículo 143 cuando el padre ejerce la patria potestad de forma compartida pero no tiene la custodia del menor. (22)
La cuantía de una pensión alimenticia al amparo del artículo 143 será proporcional a los recursos de quien los da y a las necesidades de quien los recibe. Por eso, la pensión se reducirá o aumentará en proporción a los recursos del primero y a las necesidades del segundo.(23) Según este principio de proporcionalidad, se considerarán los recursos del alimentante y la posición social de la familia, así como el “estilo de vida que lleva el alimentante”.(24) De esta forma, se intenta poner al menor alimentista en la misma posición que ocuparía si la unidad familiar hubiera quedado intacta.(25) Esto se puede demostrar a través de evidencia directa o circunstancial.(26)
La obligación de alimentar que surge del Artículo 143 es muy general y no tiene la precisión necesaria para orientar a un foro primario en la tarea de llevar a cabo un cómputo o analizar si determinado bien debe utilizarse en dicho cálculo.(27) Consciente de ello, la Asamblea Legislativa *635 atendió este asunto mediante una ley especial, comen-zando con la aprobación de la Ley Número 5 de 30 de diciembre de 1986, mejor conocida como la Ley Especial de Sustento de Menores. Esta ley ha sido enmendada en va-rias ocasiones, a medida que la Asamblea Legislativa ha desarrollado y profundizado en su acercamiento al asunto de las pensiones alimentarias de los menores de edad.(28) Si bien la versión actual de la Ley Número 5 es bastante dis-tinta a la original, es importante destacar que sus disposi-ciones acerca del cálculo de las pensiones alimenticias y sus definiciones de los conceptos relacionados con dicho cómputo no han variado significativamente. Cabe señalar que la definición de “ingreso” ha permanecido, en lo perti-nente, igual a su definición original.(29)
En su acepción actual, la Ley Número 5 establece la política pública del Estado en cuanto a los alimentos de menores, procurando “que los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes ...”.(30) La ley reconoció que “[e]l incumplimiento de las obligaciones morales y legales de alimentar a los hijos o dependientes es un grave problema social”.(31) Al reconocer las terribles consecuencias de este *636 incumplimiento, la Asamblea Legislativa estableció una política pública de interpretación liberal de la ley “a favor de los mejores intereses del menor o alimentista que nece-sita alimentos”. (32)
III
Como adelantáramos, la definición de “ingreso” en la Ley Número 5 ha permanecido sustancialmente igual desde su aprobación en 1986. La ley también hace referen-cia al concepto de “ingreso neto”.(33) Este añade la posibili-dad de que se tomen en consideración otros factores —como proyecciones de ingresos, gastos y estilo de vida— para determinar el ingreso a partir del cual se calculará una pensión alimenticia mensual.
Según la Ley Número 5, “ingreso”
... [cjomprende cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servi-cios personales, incluyendo la retribución recibida por servi-cios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del gobierno de los Estados Unidos de América, el Distrito de Columbia, las Islas Vírgenes de los Estados Unidos de América, o cualquier territorio o posesión sujeta a la jurisdicción de los Estados Unidos de América se-gún lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo *637 compensaciones como contratista independiente, compensa-ciones por desempleo, compensaciones por incapacidad, bene-ficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.(34)
Puede observarse que la ley no menciona expresamente la herencia o los bienes adquiridos a través de ésta como constitutivos de “ingreso”.(35) Este silencio es significativo, ya que la adquisición de bienes por vía de una herencia es de las modalidades más comunes y conocidas de adquirir riqueza.(36) También es notable que, desde que se adoptó la definición de “ingreso” hace ya 24 años, la Ley Número 5 ha pasado por dos procesos exhaustivos de enmiendas en 1994 y 2003, sin cambio sustancial a esta definición y sin que se añadiera referencia alguna a los bienes adquiridos mediante herencia.
La Ley Número 5 ordenó la preparación y adopción de guías para determinar y modificar las pensiones alimenticias para menores de edad.(37) De igual forma, estableció un mecanismo para calcular y fijar las pensiones que toma esas guías como punto de partida. Previendo que el empleo rígido de las guías podría resultar en una situación injusta para el menor alimentista, o incluso para el propio alimentante, la Ley Número 5 facultó tanto al tribunal como a la Administración de ASUME para determinar la pensión considerando los factores siguientes:
1. Los recursos económicos de los padres y del menor.
*638 2. La salud física y emocional del menor, y sus necesi-dades y aptitudes educacionales o vocacionales.
3. El nivel de vida que hubiera disfrutado si la familia hubiera permanecido intacta.
4. Las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente.
5. Las contribuciones no monetarias de cada parte al cuidado y bienestar del menor.
Al utilizar este método alterno, los recursos económicos del obligado a pagar la pensión alimenticia se calcularán tomando en consideración, “además del ingreso neto ordi-nario, el capital o patrimonio total del alimentante”. En cuanto al padre o madre custodio, la ley provee que “[s]e considerarán iguales criterios de la persona custodia para el cómputo proporcional a serle imputado a éste”. (Enfasis suplido.(38)
Es decir, al evaluar si una pensión alimenticia es adecuada tras el cálculo original, el tribunal deberá determinar, primero, el ingreso neto ordinario del alimentante y, segundo, su capital o patrimonio total. Es notable la diferenciación que hizo la Asamblea Legislativa entre el ingreso neto ordinario y el capital o patrimonio total del alimentante. El primero es un número determinado a partir de una entrada monetaria fija mensual al caudal del alimentante, habiéndose restado las correspondientes deducciones. El segundo —capital o patrimonio total— se refiere a bienes que, si bien no constituyen ingreso, se pueden utilizar para ajustar la cuantía de la pensión.
Los bienes que constituyen el capital o patrimonio total reciben un trato distinto al ingreso neto ordinario. En primer lugar, a estos bienes se les puede imputar ingreso, proceso que discutiremos a continuación. En segundo lugar, proveen un contexto que le permite al foro de *639 instancia ejercer su discreción para considerarlos al ajus-tar la capacidad del alimentante. De esta forma, se logra que la pensión alimenticia responda a la realidad econó-mica del alimentante. A ello se refiere la normativa cuando hace constante referencia al “estilo de vida” del alimentan-te(39) y a la “posición social de la familia” como factores que se consideran más allá del ingreso mensual devengado.(40) Por último, la Ley Número 5 establece los mecanismos para revisar la pensión original. En primer lugar, ordena una revisión rutinaria cada tres años.(41) En segundo lugar, permite la modificación de una pensión antes de los tres años si “[hay] justa causa para así hacerlo, tal como varia-ciones o cambios significativos o imprevistos en los ingre-sos, capacidad [para] generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, ne-cesidades o circunstancias del menor, o cuando exista otra evidencia de cambio sustancial en circunstancias”.(42) Esta norma estatutaria recoge la jurisprudencia que ya se había expresado a esos efectos.(43)
Siguiendo el mandato de la Ley Número 5, se promul-garon las Guías para Determinar y Modificar las Pensio-nes Alimentarias en Puerto Rico.(44) Estas Guías reempla-zaron a las primeras, adoptadas en 1989.(45) La definición de “ingreso” que contienen las Guías de 2006 vigentes es casi idéntica a la de la Ley Número 5.(46) Igual ocurre con la definición de “ingreso neto”.(47) Sin embargo, las Guías *640 de 2006 añaden dos conceptos relacionados a “ingreso” que no están incluidos en la Ley Número 5: “ingreso bruto” e “ingreso imputado”.
 En cuanto al ingreso bruto, las Guías de 2006 se refieren a la totalidad de los ingresos con los que cuen-tan la persona custodia y la no custodia previo al descuento de las deducciones mandatorias y las aceptadas.(48) Su cómputo conlleva un “análisis de todas las posibles fuentes de ingreso con las que cuenta el alimentante”.(49) En cuanto al concepto ingreso imputado, las Guías lo definen como aquel ingreso que el juzgador atribuye a la persona custodia o la no custodia cuando: (a) existan indicios o se-ñales que demuestren que cualquiera de ellos recibe ingre-sos mayores a los que informa; (b) cualquiera de ellas esté desempleada o trabajando a tiempo parcial; (c) cualquiera de ellas haya reducido su capacidad productiva para eludir la responsabilidad de alimentar.(50) Esta definición de in-greso imputado surge del mandato de la Ley Número 5 previamente discutido, en cuanto a los factores que el juz-gador debe considerar para determinar si la pensión com-putada se ajusta a la verdadera situación material del alimentante.
Como puede observarse, esta disposición de las Guías de 2006 permite que el juzgador adjudique un ingreso al alimentante distinto al que éste ha informado o, incluso, al que realmente recibe. De esta forma, se le imputa al alimentante lo que éste podría generar y no necesariamente lo que realmente genera cuando esto no es compatible con su verdadera capacidad productiva. En el caso de las propiedades, por ejemplo, a éstas se les puede atribuir lo que los tratadistas llaman un “valor rental”.(51) *641 Así, en beneficio del menor alimentista, se imputará al ali-mentante un ingreso mayor al real, independientemente de si se generan las rentas.(52)
Al momento de computar la pensión alimenticia, el punto de partida será el ingreso bruto anual del alimentante. Para determinar este ingreso de la persona custodia y de la no custodia, “se considerarán todas las formas de ingreso incluidas en la definición de [las Guías] ”.(53) Esta definición, a su vez, nos remite a la definición de “ingreso” en la Ley Número 5. Por lo tanto, si un determinado bien o recurso económico no cualifica como ingreso al amparo de la definición estatutaria, no será parte del cómputo de ingreso bruto e ingreso neto del cual saldrá el cálculo inicial de la pensión alimenticia. Ahora bien, el que un bien no sea considerado ingreso al amparo de la Ley Número 5 no impide que se le aplique la doctrina de ingreso imputado, o que caiga dentro del concepto “capital o patrimonio” al que hace referencia la ley, pues, como *642 hemos visto, además del ingreso neto ordinario, “se tomará en consideración” el capital o patrimonio total del alimentante. (Énfasis suplido.(54) Es decir, en cuanto al ingreso neto ordinario, se aplicarán los cómputos matemá-ticos prescritos por las Guías. Igual ocurrirá con el ingreso imputado, definido como el ingreso potencial que pudo ha-ber generado el alimentante. Sin embargo, en cuanto al capital o patrimonio total del alimentante, como éste no constituye ingreso —más allá de la aplicación de la doc-trina de ingreso imputado— solamente se tomará en con-sideración dentro de la flexibilidad que tiene el juzgador, en su sana discreción, al momento de fijar o ajustar una pensión alimenticia.
Hemos visto que el concepto “ingreso imputado” está recogido en las Guías de 2006.(55) Esta figura se utiliza cuando “las circunstancias pertinentes requieren que al ingreso real de la parte alimentante se le sumen cantidades de dinero adicionales ...”.(56) Es decir, al ingreso real del alimentante se le imputarán cantidades adicionales aunque éstas no se estén produciendo realmente. Esto permite que al cálculo de la pensión que debe aportar un alimentante que tiene la capacidad de generar ingresos, pero no lo hace, se le añada aquello que pudo haber generado si hubiese empleado dicha capacidad. De tal forma, el ingreso neto, “sumado a los bienes de fortuna del alimentante, constituyen la base real que se utiliza para la fijación o modificación de la pensión alimentaria”.(57)
En resumen, el punto de partida para fijar la pensión alimenticia es el ingreso bruto anual de la persona llamada a brindar alimentos. Para fijar esa cantidad, hay que referirse al concepto “ingreso” según lo definen la Ley *643 Número 5 y las Guías de 2006. Acto seguido, se calcula el ingreso neto ordinario al restar las deducciones exigidas por ley y aquellas otras que acepta el ordenamiento. Pos-teriormente, al ingreso neto ordinario se le imputará aquel ingreso que, aunque no se esté generando realmente, se pudo haber generado. Por último, el foro adjudicador podrá atemperar la cuantía calculada tomando en consideración el capital o patrimonio total del alimentante. La pregunta que nos ocupa es en cuál de los pasos previamente mencio-nados, si alguno, caben aquellos bienes que son adquiridos por herencia.
IV
En primer lugar, atendemos la interrogante de si unos bienes, sean inmuebles o muebles, adquiridos mediante una herencia constituyen, como tal, ingreso. Recientemente nos topamos con una interrogante similar. En Llorens Becerra v. Mora Monteserín, 178 D.P.R. 1003 (2010), consideramos si la capitalización producto del refinanciamiento de un préstamo con garantía hipotecaria constituía ingreso al amparo de la Ley Número 5, según enmendada, y las Guías para Determinar y Modificar las Pensiones Alimentarias.(58) En aquella ocasión resolvimos que lo obtenido por un préstamo no constituía ingreso. Al referimos al mandato de la Ley Número 5 de hacer una lectura liberal de sus disposiciones, manifestamos:
Si bien el concepto ingreso incluido en la Ley Núm. 5 es uno abarcador y que requiere una interpretación amplia en favor del derecho del menor alimentista, las inclusiones bajo dicho concepto deben, a su vez, representar ganancias, beneficios, rendimiento o frutos con los que realmente cuente el alimen- *644 tante, de forma tal que se establezca una pensión justa y razonable.(59)
Es decir, no obstante el mandato de ley de llevar a cabo una interpretación liberal de los conceptos incluidos en ella, no podemos insertar en el estatuto algo que está ex-cluido y que no se relaciona con los elementos expresa-mente incluidos.(60) En Llorens Becerra v. Mora Monteserín, supra, resolvimos que la definición estatutaria de ingreso no incluía dinero prestado porque éste no consti-tuye ganancia. Ahora bien, también concluimos que, aun-que lo obtenido mediante préstamo no constituía ingreso, ello “no significa que el valor de las propiedades de quien está obligado a prestar alimentos o las deudas y obligacio-nes prestatarias en que éste haya incurrido no puedan con-siderarse en forma alguna para determinar su capacidad económica”, como parte del capital o patrimonio total que debe tomarse en consideración. (Enfasis suplido.)(61)
Al igual que en Llorens Becerra v. Mora Monteserín, supra, nos vemos obligados a llenar una laguna en la ley, ante el silencio legislativo sobre la herencia como ingreso. Para ello, recurriremos a otras expresiones legislativas en las que se define el concepto “ingreso”.(62)
*645 La Sección 1022 del Código de Rentas Internas de 1994 define lo que constituye ingreso para fines contributivos.(63) De forma expresa, el Código de Rentas Internas excluye de la definición de ingreso las donaciones, mandas, legados y herencias.(64) Sin embargo, el propio Código incluye una serie de excepciones a esa regla general de que las herencias no constituyen ingreso. Estas son: ingreso de los bienes adquiridos por donación o herencia; cuando la donación o herencia consiste de ingreso de bienes, o cuando la donación o herencia es para pagarse a intervalos.(65) Esto es así, pues “[s]iendo ya el heredero o donatario el titular de la propiedad, es él dueño por derecho propio del ingreso que el bien produce y le corresponde, por lo tanto, incluirlo en su ingreso bruto”. (Enfasis suplido.(66) Esto, a su vez, es cónsono con el mandato del Código de Rentas Internas que en su definición de ingreso incluye “ganancias o beneficios e ingresos derivados de cualquier procedencia”. (Enfasis suplido.(67) Es decir, que si bien el principal de una herencia no se considerará ingreso para efectos contributivos, lo que se genere de esa herencia sí lo será.
*646 En cuanto a las razones por las cuales el ordenamiento contributivo no considera una herencia como ingreso, nos dice Meléndez Carrucini que “[t]radicionalmente, las he-rencias y donaciones se han sometido a la contribución so-bre herencias y donaciones solamente. Imponerles además la contribución sobre ingresos, equivaldría a someter el mismo valor, aunque técnicamente no el mismo evento, a doble tributación, onerosidad que el legislador, según pa-rece, procuró eludir con la exención de uno de los dos even-tos, en este caso, el de la contribución sobre ingresos”.(68) Es decir, la explicación que nos propone Meléndez Carru-cini de por qué no se imponen contribuciones sobre ingreso a lo recibido por herencia no corresponde a nuestra reali-dad actual, pues, desde 1983, también se exime de contri-buciones al acto de donar o dejar en herencia algún bien.(69) Sin embargo, lo cierto es que, casi 30 años después de exi-mir a las herencias de contribución por ese evento, la Asamblea Legislativa ha mantenido la exclusión de los bie-nes adquiridos mediante herencia de la definición de in-greso tributable para efectos de contribución por ingreso.
La definición de “ingreso” que encontramos en la Ley Número 5 nos revela un hilo conductor: la estrecha rela-ción entre este término y los conceptos esfuerzo, trabajo y ganancia.(70) Es evidente la exclusión de otros elementos que, si bien constituyen riqueza, no guardan relación con el trabajo ni con la visión del ingreso como producto de una labor realizada o una ganancia obtenida. Esa relación está presente en otros sectores de nuestro ordenamiento que intentan precisar las ideas de “ingreso” y “ganancia”. Lo encontramos, a modo de ejemplo, como elemento definito-rio de los bienes sometidos al régimen ganancial en aque- *647 líos matrimonios sujetos a la Sociedad Legal de Gananciales.(71) Aquí también se utilizan como criterio se-parador los elementos esfuerzo, industria y trabajo. En el Artículo 1301 del Código Civil se mencionan los bienes ob-tenidos por industria, sueldo o trabajo y los frutos, rentas o intereses percibidos o devengados provenientes de bienes comunes o peculiares como bienes de naturaleza ganancial. También está presente este criterio diferencia-dor en el artículo 1299 del Código Civil, aunque en sentido contrario, al caracterizar expresamente los bienes adquiri-dos por título lucrativo por donación, legado o herencia como de naturaleza privativa. La Ley Número 5, al igual que el Artículo 1301 del Código Civil, expresamente in-cluye como “ingreso” que debe ser considerado para compu-tar una pensión alimenticia a la industria y al sueldo, así como a las rentas e intereses devengados.(72)
V
Si bien nuestra normativa y jurisprudencia son base su-ficiente para interpretar el alcance del concepto “ingreso”, según definido por la Ley Número 5, y determinar si éste incluye bienes adquiridos por herencia, entendemos prove-choso, por su valor persuasivo e ilustrador, analizar cómo otras jurisdicciones han atendido controversias similares.
Varias jurisdicciones de Estados Unidos han atendido *648 directamente la interrogante de si se debe considerar una herencia como ingreso(73) para determinar una pensión ali-menticia a favor de un menor de edad. Teniendo en cuenta que muchas de esas interpretaciones corresponden a defi-niciones estatutarias que no necesariamente son iguales a la nuestra, examinaremos algunas de ellas, con la debida cautela.
Los casos resueltos en las jurisdicciones estadouniden-ses se pueden agrupar en tres tendencias. La tendencia mayoritaria ha resuelto que lo adquirido mediante heren-cia no constituye ingreso y que se pueden imputar ingresos a partir de lo que los bienes heredados produjeron o pudie-ron haber producido si se hubiesen invertido. Estos tribu-nales concluyen, además, que la totalidad de la herencia puede ser un factor subjetivo a considerar para ajustar la pensión. La segunda tendencia considera que la herencia no constituye ingreso y que sólo se puede tomar en consi-deración como factor contextual cuando se fija el monto de urna pensión alimenticia. La tendencia minoritaria consi-dera que una herencia sí constituye ingreso para efectos de determinar una pensión. (74)
Vemos un ejemplo de la tendencia mayoritaria en Nueva Jersey, donde se ha resuelto que, si bien el principal *649 de una herencia no constituye ingreso, los intereses que ésta genera se imputarán como ingreso. Además, se ha de-terminado que el caudal heredado se puede considerar para computar la pensión aunque no constituya ingreso propiamente.(75) En cuanto a la imputación de los ingresos devengados de la herencia, no se distingue entre lo que realmente se devengó y lo que se pudo haber devengado: “The voluntary choice of the father placing his inheritance in a non-income producing asset should not result in an exclusion of that asset from consideration in the child support equation.”(76)
En otros estados no se han incluido los bienes heredados como ingreso, pero no se ha adoptado la figura del ingreso imputado; en vez, se ha resuelto que esos bienes se deben considerar como un factor subjetivo al momento de fijar una pensión definitiva. Entre estos estados se encuentra Pennsylvania, donde el Tribunal Supremo interpretó que la omisión legislativa de incluir a la herencia en un listado detallado de los bienes que constituyen ingreso indica que ésta no cabe dentro de la definición estatutaria de ingreso. Cabe destacar que la definición estatutaria de ingreso(77) de ese estado es similar a la nuestra.(78) Aún así, el Tribu *650 nal Supremo de Pennsylvania determinó que la herencia puede afectar la cantidad otorgada como pensión, pues las guías alimentarias del estado incluyen una referencia a los activos(79) del alimentante como un factor que debe considerarse.(80)
La interpretación de la mayoría de los tribunales esta-tales de Estados Unidos está en sintonía con los pronun-ciamientos del Tribunal Supremo de España, al amparo de los Artículos 143 y 146 del Código Civil. En el caso particular de una herencia, en la Sentencia de 11 de octubre de 1951(81) el Tribunal Supremo avaló una pensión alimenti-cia basada en una “cantidad equivalente al 80 por 100 del valor líquido de las rentas de los bienes relictos”. (Enfasis suplido.) Es decir, no exigió el uso de la totalidad de los bienes relictos al momento de calcular la cuantía de una pensión, sino que se limitó a imputar como ingreso el valor líquido de los beneficios producidos por dichos bienes.
VI
Al momento de fijar una pensión alimenticia, tanto la doctrina como la jurisprudencia han empleado numerosos conceptos cuyo uso intercambiable, a pesar de sus similitu-des, se presta a confusión. Por ejemplo, se ha hecho refe- *651 renda a “recursos”,(82) “capacidad económica”,(83) “bie-nes”,(84) “fortuna”,(85) “ingreso”,(86) “estilo de vida”,(87) “posi-ción social de la familia”,(88) “beneficios”,(89) “ganancias”,(90) “posibilidad económica”,(91) “caudal”,(92) “medios” (93) y “capital o patrimonio”.(94)
Si bien la obligación general de alimentar proviene del Artículo 143 del Código Civil, cuyo mandato es amplio y a la misma vez impreciso, según el principio de especialidad debemos recurrir principalmente a la Ley Número 5 y las Guías de 2006 al atender una controversia sobre alimentos de menores. Como hemos visto, el asunto de umbral para fijar la cuantía de una pensión alimenticia de un hijo o hija menor de edad que no vive con un padre es determinar cuáles son sus ingresos. Para ello hay que recurrir a la *652 definición de ingreso de la Ley Número 5 y las Guías de 2006.
Esta definición de ingreso no menciona expresa ni im-plícitamente los bienes adquiridos por herencia. No se trata de una omisión involuntaria. En Puerto Rico, a dia-rio, se traspasan bienes producto de particiones de herencia. No obstante, la Legislatura no incluyó estos bie-nes en la definición de ingreso de la ley. Esto es cónsono con la exclusión de las herencias para efectos contributivos y del régimen económico de un matrimonio sujeto a la so-ciedad legal de gananciales. Es decir, hay una tendencia palpable en nuestro ordenamiento de separar los bienes producto del trabajo, que constituyen ganancia, de otros tipos de riqueza, al menos en cuanto se refiere a la defini-ción de “ingreso”. Más aún, se advierte una tendencia con-sistente y reiterada de separar la institución de la herencia del concepto ingreso. La controversia ante nuestra conside-ración no es la excepción.
Sin duda, los bienes adquiridos mediante herencia constituyen riqueza para quien los recibe. No obstante, no encontramos nada en nuestra normativa que nos permita catalogar dicha riqueza como ingreso. Más aún cuando se trata de bienes recibidos como producto de un evento que no es recurrente. Por lo tanto, resolvemos que los bienes adquiridos mediante herencia no constituyen ingreso para efectos del cómputo de una pensión alimenticia al amparo de la Ley Número 5 de 1986, según enmendada, y las Guías de 2006. Tampoco lo son según el Artículo 146 del Código Civil.
No obstante, cónsono con la distinción entre la herencia y los bienes que ésta produce, y que el Código de Rentas Internas considera ingreso para fines contributivos, así como los pronunciamientos del Tribunal Supremo de Es-paña y la tendencia mayoritaria de la jurisprudencia esta-dounidense, resolvemos que la figura imputación de in- *653 greso aplica a los bienes adquiridos mediante herencia, sean éstos de naturaleza mueble o inmueble. Esto es con-sistente con la propia Ley Número 5 que, en su definición de “ingreso”, incluye cualesquiera “ganancias, beneficios, rendimientos, fondos, emolumentos o compensaciones deri-vados de cualquier procedencia ...”. (Enfasis suplido.(95) En efecto, a través de nuestra discusión del concepto “in-greso”, es notable la referencia al elemento de fruto o ga-nancia derivado de alguna fuente principal, sin que dicha fuente se considere ingreso por sí misma.(96)
Por lo tanto, para determinar el ingreso bruto de un alimentante, a los bienes adquiridos mediante herencia se les imputará un ingreso, independientemente de si producen ese ingreso en la realidad. Si los bienes heredados producen ingresos, se trata meramente de aplicar el mandato de ley que identifica cualquier ganancia derivada de cualquier procedencia como ingreso computable a efectos de la pensión. Si no se produce en realidad, se trata de la aplicación de la figura de imputación de ingreso recogida en la propia Ley Número 5(97) y en las Guías de 2006.(98) Le corresponde a los foros de instancia, en el ejercicio de su sana discreción y según la totalidad de las circunstancias del caso particular, realizar este cómputo.
Además de imputarle ingreso a los bienes heredados, resolvemos que la cantidad y naturaleza de éstos constitu-yen un factor legítimo que deben considerar los foros de instancia al evaluar si una pensión alimenticia es justa y si es compatible con la verdadera situación económica del alimentante. Es decir, se puede utilizar como factor subje-tivo para ajustar la cantidad de una pensión de tal forma *654 que sea verdaderamente proporcional a la capacidad eco-nómica del alimentante. Llegamos a esta conclusión como consecuencia del mandato de ley que le requiere a los tribunales considerar el capital o patrimonio total del alimentante. En fin, se trata de un ajuste que queda a la sana discreción del tribunal según su apreciación de las circunstancias y de la prueba presentada. (99)
VII
En el caso de autos, estamos ante un padre alimentante que no ha rehuido de su responsabilidad de proveer ali-mentos para su hijo menor de edad. Este pleito comenzó, precisamente, con una demanda que presentó el propio pe-ticionario para que se fijara la cuantía de la pensión que pagaría a favor de su hijo. La controversia ante nuestra consideración se limita a cómo fijar una pensión alimenti-cia que sea justa y proporcionada a las capacidades del padre alimentante y a las necesidades del menor alimen-tista, según lo ha establecido nuestra Asamblea Legisla-tiva en la Ley Número 5, según enmendada.
El señor Fonseca Zayas genera un ingreso mensual neto de $3,000. Producto de la muerte de su padre en el 2006, éste obtuvo mediante herencia bienes que suman $170,000 en propiedades y $48,000 en efectivo. Como hemos visto, estas cantidades, de por sí, aunque constituyen riqueza, no deben ser consideradas como ingreso. Tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones erraron al considerar estos bienes al momento de computar el in-greso mensual neto del peticionario.
No obstante, a estos bienes heredados se les debe impu-tar un ingreso según lo que hubiesen producido si se hu-bieran invertido. Corresponde al foro de instancia llevar a cabo este análisis. Será esa cantidad la que se le imputará *655 al peticionario como parte de su ingreso mensual. Es decir, se le añadirá al ingreso mensual neto de $3,000 una canti-dad equivalente a lo que en ese periodo de tiempo hubiesen producido los bienes heredados de haberse invertido. Tras determinar el ingreso mensual neto y calcular la pensión a partir de esa cantidad, el tribunal de instancia podrá ajus-tar la cantidad final, dentro de su sana discreción, como parte de un análisis sobre el impacto global de los bienes hereditarios en la capacidad económica del alimentante.
Por las razones expuestas anteriormente, se revoca la Sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la celebración de procedimientos ulteriores compatibles con esta opinión.

Se dictará sentencia de conformidad.

 En su demanda, el señor Fonseca Zayas sugirió una pensión alimenticia mensual de $510.

 Esa cantidad se desglosó de la siguiente manera: $273.82 de pensión básica y $248.23 de suplementaria. Recomendación de la Examinadora de Pensiones, 28 de octubre de 2005.

 Además, el peticionario pagaba $64.71 mensuales por concepto de plan médico.

 En octubre de 2007, el peticionario recibió una herencia debido a la muerte de su padre.

 La Examinadora tomó los $48,900 en efectivo de la herencia y los dividió entre 12 meses como si se tratase de un ingreso con una duración de un año.

 Sentencia de 28 de febrero de 2008. Además, el foro de instancia acogió la recomendación de la Examinadora y dio efecto retroactivo a la nueva pensión.

 8 L.P.R.A. sec. 501 et seq.

 Reglamento Núm. 7135 de 23 de mayo de 2006.

 Sentencia del Tribunal de Apelaciones de 10 de octubre de 2008, pág. 8, Apéndice de la Petición de certiorari, pág. 105.

 8 L.P.R.A. sec. 518(b).

 8 L.P.R.A. sec. 518(c).

 El auto de certiorari fue expedido el 27 de enero de 2009. El 29 de enero de 2009, mediante Resolución nunc pro tune, incluimos la orden de paralización de los procedimientos y de reinstalación de la pensión provisional.

 Rodríguez v. Depto. Servicios Sociales, 132 D.RR. 617, 629 (1993); López v. Rodríguez, 121 D.P.R. 23, 28 (1988).

 Rodríguez v. Depto. Servicios Sociales, supra, pág. 630. Véase, además, S. Torres Peralta, La Ley de Sustento de Menores y derecho alimentario en Puerto Rico, San Juan, 2006-2007, T. 1, pág. 1.01.

 Mundo v. Cervoni, 115 D.P.R. 422, 426 (1984).

 Rodríguez v. Depto. Servicios Sociales, supra, pág. 633.

 íd., pág. 631.

 32 L.P.R.A. sees. 561-570.

 El Articulo 153 del Código Civil dispone:
“El padre y la madre tienen, respecto de sus hijos no emancipados:
“(1) El deber de alimentarlos, tenerlos en su compañía, educarlos e instruirlos con arreglo a su fortuna, y representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho.
“(2) La facultad de corregirlos y castigarlos moderadamente o de una manera razonable.” 31 L.P.R.A. see. 601.

 Martínez v. Rodríguez, 160 D.P.R. 145, esc. 5 (2003).

 Guadalupe Viera v. Morell, 115 D.P.R. 4, 11-12 (1983). Por su parte, el Artículo 143 de Código Civil dispone que:
“Están obligados recíprocamente a darse alimentos, en toda la extensión que señala el [Artículo 142] de este [Código]:
“(1) Los cónyuges.
“(2) Los ascendientes y descendientes.
“(3) El adoptante y el adoptado y sus descendientes.
*634 “Los hermanos se deben recíprocamente aunque sólo sean uterinos, consanguí-neos o adoptivos los auxilios necesarios para la vida, cuando por un defecto físico o moral, o por cualquier otra causa que no sea imputable al alimentista, no puede éste procurarse su subsistencia. En estos auxilios están, en su caso, comprendidos los gastos indispensables para costear la instrucción elemental y la enseñanza de una profesión, arte u oficio.” 31 L.P.R.A. see. 562.

 Chévere v. Levis, 150 D.P.R. 525, 538-539 (2000).

 Art. 146 del Código Civil, 32 L.P.R.A. sec. 565.

 López v. Rodríguez, supra, pág. 33. Guadalupe Viera v. Morell, supra, págs. 14-15.

 8 L.P.R.A. sec. 518(b)(3).

 López v. Rodríguez, supra, pág. 33.

 En España, esto ha llevado a que a los tribunales de instancia se les reco-nozca un altísimo grado de discreción en la fijación de las pensiones alimenticias. Los tribunales de mayor jerarquía rara vez intervienen con esas determinaciones, las cuales, por su propia naturaleza y por lo general del mandato del Código Civil, pueden ser significativamente diferentes entre sí. Como consecuencia, las expresio-nes del Tribunal Supremo de España en cuanto a esto son bastante imprecisas y generales. El Artículo 143 de nuestro Código Civil es análogo a la versión española del mismo. Véanse, por ejemplo: XVIII Aranzadi, Repertorio de Jurisprudencia 1292, donde, para determinar la suficiencia de una pensión, el tribunal se limitó a la figura *635 de “proporcionalidad” entre necesidad y caudal; XLIV Aranzadi, Repertorio de Juris-prudencia 3642, donde el tribunal se refiere a figuras como “fortuna” e “ingresos” sin ofrecer una definición precisa de su contenido; XLVIII Aranzadi, Repertorio de Ju-risprudencia 3593, donde se hace mención de conceptos amplios como “posibilidades económicas del obligado” y “caudal” de quien presta la pensión como parte del au-mento proporcional de la pensión al incremento de ingresos del alimentante; LXVIII Aranzadi, Repertorio de Jurisprudencia 6246, donde se hace referencia únicamente al ejercicio de ‘Valorar la capacidad económica del alimentante”; LXX Aranzadi, Re-pertorio de Jurisprudencia 3624, que menciona elementos amplios como “caudal de bienes”, “nivel de vida” y “modus vivendi”.

 Se destacan la Ley Número 86 de 17 de agosto de 1994, mejor conocida como la Ley Orgánica de la Administración para el Sustento de Menores, y la Ley Número 178 de 1 de agosto de 2003.

 8 L.P.R.A. sec. 501(16).

 8 L.P.R.A. sec. 502.

 Exposición de Motivos de la Ley Núm. 86 de 17 de agosto de 1994, Leyes de Puerto Rico 391, 393, que enmendó la Ley Número 5 de 1986.

 Art. 3 de la Ley Número 5 (8 L.P.R.A. sec. 502).

 8 L.P.R.A. sec. 501(17).

 8 L.P.R.A. sec. 501(16). En su acepción no jurídica, “ingreso” se define como el “[c]onjunto de cantidades que alguien percibe regularmente ...”. (Énfasis suplido.) M. Moliner, Diccionario de Uso del Español, 2da ed., Madrid, Ed. Gredos, 1998, T. 1, pág. 60.

 “[W]here certain things are specified in a statute, omissions are exclusions.” Humphreys v. De Ross, infra, pág. 285.

 Son ilustrativas las palabras del Tribunal Supremo de Pennsylvania en Humphreys v. DeRoss, 790 A.2d 281, 285 (Pa. 2002):
“Considering that inheritance is one of the most common means by which wealth is transferred, it defies logic that the legislature would not have clearly provided for inheritance within the statutory definition of income if that were its intent.”

 8 L.P.R.A. sec. 518(a).

 8 L.P.R.A. sec. 518(b). Véase, además, I. López Paláu, La pensión alimenta-ria de los hijos en Puerto Rico, Río Piedras, Eds. Lego, 1998, págs. 72-73.

 López v. Rodríguez, supra, pág. 33.

 Guadalupe Viera v. Morell, supra, p. 14.

 8 L.P.R.A. sec. 518(c).

 8 L.P.R.A. sec. 518(d).

 Véanse: Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61 (1987); García v. Acevedo, 78 D.P.R. 611 (1955).

 Reglamento Núm. 7135, supra.

 Reglamento Núm. 4070 de 8 de diciembre de 1989.

 Las diferencias mínimas entre ambas disposiciones no son pertinentes para la controversia que nos ocupa. Para la definición de “ingreso”, véase Art. 4(15) de las Guías de 2006.

 Art. 4(18) de las Guías de 2006.

 Art. 4(16) de las Guías de 2006.

 Martínez v. Rodríguez, supra, pág. 156.

 Art. 4(17) de las Guías de 2006.

 Torres Peralta, op. cit., pág. 9.21.

 La jurisprudencia española no es extraña a esta figura. Si bien el mandato del Artículo 143 del Código Civil, como hemos visto, es considerablemente amplio e impreciso, es notable el reconocimiento de la jurisprudencia española de que el punto de partida para la fijación de una pensión serán los “ingresos líquidos mensuales” del alimentante y que los tribunales deben estar pendientes en casos de “desproporción” entre la capacidad de éste y las necesidades del alimentista. XXIX Aranzadi, Reper-torio de Jurisprudencia 1704. Llama la atención la relación que el tribunal establece entre los conceptos ingreso y liquidez. No obstante, la casuística española ha impu-tado ingresos en cuanto a lo producido por los bienes heredados. En la Sentencia de 31 de diciembre de 1957, XXIV Aranzadi, Repertorio de Jurisprudencia 3564, el Tribunal Supremo de España corrigió a un foro de instancia por haber prescindido de algunos de los elementos exigidos por el Artículo 146 al momento de fijar la cuantía de una pensión alimenticia. En particular, el Tribunal Supremo resolvió que tenían que añadirse al monto computado los productos de unos bienes. Es decir, que a unos bienes se les debía imputar la producción de ingreso. Véanse, además: XXXIV Aran-zadi, Repertorio de Jurisprudencia 1949, en cuanto a la rentabilidad de unas propie-dades, y la XLVI Aranzadi, Repertorio de Jurisprudencia 2948, sobre la imputación objetiva en cuanto a las posibilidades de generar ingreso de determinada profesión u oficio.

 Art. 7(A)(1) de las Guías de 2006. Acto seguido, las Guías de 2006 exponen una lista de excepciones de entradas económicas que no se considerarán ingresos. Entre estos están los beneficios del Programa de Asistencia Temporal a Familias Necesitadas (TANF, Categoría C) y los pagos recibidos al amparo del Programa de Asistencia Nutricional (PAN). Esta lista no pretende ser taxativa. La tratadista Sarah Torres Peralta identifica una excepción adicional en los préstamos estudiantiles. Torres Peralta, op. cit., págs. 4.40-4.41.

 8 L.P.R.A. sec. 518(b).

 Art. 4(17) de las Guías de 2006.

 Torres Peralta, op. cit, pág. 4.31.

 íd., pág. 8.06.

 En este caso, las guías vigentes eran aquellas recogidas en el Reglamento Núm. 4070, supra. Como hemos visto, en cuanto a la definición de ingreso, no hay-diferencia entre éstas.

 Llorens Becerra v. Mora Monteserín, 178 D.P.R. 1003 (2010).

 “[L]as palabras asociadas se explican y limitan entre sí.” R. Elfrén Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 339. “Cuando las palabras generales siguen a palabras específicas en una enumeración descriptiva, las palabras generales se interpretan para que incluyan solamente objetos similares en su naturaleza a los enumerados por las palabras específicas que los preceden.” íd., pág. 341.

 Llorens Becerra v. Mora Monteserín, supra, págs. 28-29.

 En Llorens Becerra v. Mora Monteserín, supra, pág. 24, hicimos la expresión de cautela siguiente:
“A pesar de que la definición de ingreso de la Ley Núm. 5 incluye una redacción casi idéntica a la Ley de Contribuciones sobre Ingresos de 1954, la interpretación del concepto ingreso que hemos discutido tiene un carácter meramente ilustrativo en lo que respecta a la controversia ante nuestra consideración. El alto interés público de asegurar el bienestar de los menores alimentistas y el derecho de éstos a recibir alimentos, como uno que es inherente a su derecho a la vida, podría requerir una interpretación aún más abarcadora del concepto ingreso en el contexto de la imposi-ción de una pensión alimentaria.
*645 “Así, la interpretación que adoptemos debe ser cónsona con el propósito de la Ley Núm. 5 de asegurar el bienestar de los menores alimentistas. A su vez, la inter-pretación del concepto ingreso debe concordar con el principio de proporcionalidad que rige la fijación de una pensión alimentaria.”
No obstante, en San Juan Trading Co. v. Srio. de Hacienda, 80 D.P.R. 807, 816 (1958), al interpretar el alcance del concepto “ingreso bruto” dentro del contexto contributivo, reconocimos la importancia de una “amplia y generosa interpretación que dé cumplimiento al propósito legislativo de ejercer a plenitud la facultad de imponer tributos”. Es decir, por haber un interés elevado del Estado tanto en recau-dar contribuciones como en velar por el cumplimiento con las obligaciones alimenti-cias de los padres para con sus hijos, es razonable explorar las similitudes en las definiciones del término “ingreso” en ambas áreas.

 13 L.P.R.A. sec. 8422.

 13 L.P.R.A. sec. 8422(b)(3).

 G. Meléndez Carrucini, Ingreso no tributable: exclusiones y doctrina, San Juan, Instituto de Contribuciones de Puerto Rico, 1994, pág. 211.

 íd., pág. 215.

 íd. Este lenguaje es similar al utilizado por la Ley Número 5, según enmen-dada, 8 L.P.R.A. sec. 501(16), en su definición de ingreso cuando se refiere a “ganan-cias, beneficios, rendimientqs, fondos, emolumentos o compensación derivados de cualquier procedencia ...”. (Enfasis suplido.)

 Meléndez Carrucini, op. cit., pág. 210.

 íd.

 Véase nota al calce número 60 sobre la interpretación estatutaria y las palabras asociadas.

 Arts. 1299 y 1301 del Código Civil, 31 L.P.R.A. secs. 3631 y 3641, respectiva-mente.

 Otro ejemplo en el campo del régimen económico del matrimonio, que ayuda a ver la distinción entre dos tipos de riquezas al momento de determinar si es ga-nancial o privativo, es la clasificación que se hace de la compensación que recibe un cónyuge por daños y perjuicios. A pesar de que se trata de una compensación mone-taria, hemos resuelto que, por no constituir ganancia, lo recibido por ese concepto debe ser considerado como un bien privativo. Robles Ostolaza v. U.P.R., 96 D.P.R. 583, 595-596 (1968). Tampoco es considerado como ingreso para efectos de una pen-sión alimenticia.

 Income.

 No nos convence la tendencia minoritaria en las jurisdicciones estadouni-denses que caracteriza la herencia como ingreso para efectos del cómputo de la pen-sión alimenticia. En algunos de esos casos, esa conclusión se basa en definiciones estatutarias que, si bien no mencionan herencias expresamente, incluyen las dona-ciones como un tipo de ingreso. Este es el caso de Virginia (Forsythe v. Forsythe, 41 Va. Cir. 82 (1996)), e Indiana (Gardner v. Yrttima, 743 N.E.2d 353 (Ind. App. 2001)), cuyos tribunales han resuelto equiparar la herencia a la donación. Sin embargo, nuestro ordenamiento no permite esta analogía. En primer lugar, las donaciones no están incluidas expresamente en la definición de ingreso ofrecida por la Ley Número 5 o por las Guías de 2006. En segundo lugar, en Puerto Rico, si bien existen gracias testamentarias cuya causa es la mera liberalidad semejante a las donaciones, como en el caso de un legado a un extraño, la herencia en muchos casos obedece a requi-sitos de ley como la institución de la herencia forzosa en las legítimas de descendien-tes y ascendientes que tienen poco que ver con el ánimo de liberalidad. Dávila v. Agrait, 116 D.P.R. 549, 575 (1985).

 Connell v. Connell, 712 A.2d 1266, 1269 (N.J. Super. A.D. 1998).

 Id. A igual conclusión se llegó en Connecticut (Stula v. Stula, FA 940544358S 1998, Conn. Super. LEXIS 523), Arkansas (Halter v. Halter, 959 S.W.2d 761, 762 (Ark. App. 1998)), en donde se resolvió que se puede emplear tanto una ganancia hipotética como cualquier ganancia que la herencia podía haber generado, y Missouri (Gal v. Gal, 937 S.W. 2d 391 (Mo. App. E.D. 1997)), en donde el tribunal determinó que la herencia no era ingreso sino que se podía utilizar para descifrar la situación económica del alimentista. En el estado de Washington se ha resuelto que el monto principal de una herencia no es un ingreso para efectos de una pensión alimenticia, pero que los frutos e intereses producidos por ésta sí lo son. Así se concluyó también en Ohio (Reech v. Reech, No. 70241, 1997 Ohio App. LEXIS 318), y en Alaska (Robinson v. Robinson, 961 P.2d 1000 (Alaska 1998); Crayton v. Crayton, 944 P.2d 487, 490 (Alaska 1997)).

 Income.

 Sec. 4302 Domestic Relations Code, 23 Pa. C.S. Secs. 101-8215.

 Assets.

 En California, al igual que en las jurisdicciones mencionadas anterior-mente, el monto principal de una herencia no se considera ingreso para efectos de una pensión alimenticia. County of Kern v. Castle, 89 Cal. Rptr. 2d 874 (Cal. App. S Dist. 1999). Al igual que en Puerto Rico, la definición estatutaria de ingreso no menciona la herencia expresamente. íd., pág. 878. Pero, los tribunales han resuelto que se puede tomar en consideración lo que llama “this newly found wealth” al momento de determinar la cuantía de una pensión, con el objetivo de que el menor alimentista pueda compartir el nivel de vida mejorado de su padre. Id., pág. 883. A semejante conclusión se ha llegado en Nueva York (Cody v. Cody, 735 N.Y.S.2d 181, 291 A.D. 2d 27 (2001)), Massachusetts (Croak v. Bergeron, 856 N.E.2d 900 (Mass. App. Ct. 2006)), y en el Distrito de Columbia (Lasche v. Levin, 977 A.2d 361 (D.C. 2009)).

 Repertorio de Jurisprudencia 2347.

 Artículo 146 del Código Civil, 31 L.P.R.A. see. 565; R. Serrano Geyls, Dere-cho de familia de Puerto Rico y legislación comparada, San Juan, Programa Ed. Jurídica Continua de la Facultad de Derecho de la UIA, 2002, Vol. II, pág. 1465; A. Padial Albás, La obligación de alimentos entre parientes, Barcelona, Ed. Bosch, 1997, pág. 248; Tbrres Peralta, op. cit., pág. 8.01.

 Chévere v. Levis, supra, pág. 530; Ferrer v. González, 162 D.P.R. 172, 179-180 (2004); Repertorio de Jurisprudencia, supra, pág. 11101; Torres Peralta, op. cit., pág. 8.04.

 Betancourt v. Larregui, 27 D.P.R. 606, 607 (1919); Repertorio de Jurispru-dencia 3564.

 Chévere v. Levis, supra, pág. 502; Padial Albás, op. cit., pág. 250; P. Beltrán de Heredia y Onís, La obligación legal de alimentos entre parientes, Salamanca, Eds. Anaya, 1958, pág. 59.

 Chévere v. Levis, supra, pág. 530; Ferrer v. González, supra, págs. 179-180; Repertorio de Jurisprudencia supra, pág. 1137.

 López v. Rodríguez, supra, pág. 33; Chévere v. Levis, supra, pág. 502; Ferrer v. González, supra, pág. 180.

 Guadalupe Viera v. Morell, supra, pág. 14; Beltrán de Heredia y Onís, op. cit, pág. 59.

 Torres Rodríguez v. Carrasquilla Nieves, 177 D.P.R. 728 (2009).

 íd.

 Padial Albás, op. cit., pág. 247.

 Beltrán de Heredia y Onís, op. cit., pág. 59; Repertorio de Jurisprudencia 1888; Repertorio de Jurisprudencia 7464.

 íd.

 Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. see. 518(b).

 8 L.P.R.A. sec. 501(16).

 Martínez v. Rodríguez, supra, pág. 156; 8 L.P.R.A. sec. 501(16).

 8 L.P.R.A. sec. 518(b).

 Art. 4(17) de las Guías de 2006.

 Mundo v. Cervoni, supra, pág. 427.